GAIL F. DZIOKONSKI, administratrix,[1] *vs.* OLA BABINEAU & others[2]
(and a companion case[3]).

Worcester. December 8, 1977. — June 30, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Negligence*, Motor vehicle, Emotional distress. *Emotional Distress*, Physical injuries to another. *Actionable Tort*.

Review of authorities pertaining to recovery for physical injury resulting from fright or emotional distress. [558-562]

Allegations in a complaint concerning a parent who sustains substantial physical harm as a result of severe mental distress over some peril or harm to his minor child caused by the defendant's negligence state a claim for which relief might be granted where the parent either witnesses the accident or soon comes on the scene while the child is still there. [562-569] QUIRICO, J., dissenting.

Neither a complaint alleging that the mother of a child who was injured as a result of the defendants' negligence suffered an emotional distress when finding her child seriously injured resulting in the mother's death nor a complaint alleging that the father of the child died as a result of emotional distress over the injury to his daughter and the death of his wife should have been dismissed for failure to state a claim. [569] QUIRICO, J., dissenting.

---

[1] Gail F. Dziokonski is suing as administratrix of the estate of Lorraine Dziokonski.

[2] The other defendants are Walter Pelletier and Sylvester Kroll.

[3] The companion action is brought by Gail F. Dziokonski, as administratrix of the estate of Anthony Dziokonski, against the same defendants.

CIVIL ACTIONS commenced in the Superior Court on October 23, 1975.

The cases were heard by *Meagher*, J., on motions to dismiss.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*T. Philip Leader* for the plaintiffs.

*Eugene L. Rubin* for Ola Babineau.

*Douglas Q. Meystre* for Walter Pelletier & another.

WILKINS, J. These appeals require us to reexamine the question whether a person who negligently causes emotional distress which leads to physical injuries may be liable for those injuries even if the injured person neither was threatened with nor sustained any direct physical injury. At the heart of the plaintiffs' claims is the argument that this court should abandon the so called "impact" rule of *Spade* v. *Lynn & Boston R.R.*, 168 Mass. 285, 290 (1897), which denies recovery for physical injuries arising solely from negligently caused mental distress. We agree that the rule of the *Spade* case should be abandoned. Our inquiry does not cease at that point, however, because we must determine what new limits of liability are appropriate and how those limits affect the plaintiffs' decedents, parents of a child alleged to have been injured by the defendants' negligence.

These appeals, transferred here on our own motion, come to us following the allowance of the defendants' motions to dismiss for failure to state claims on which relief can be granted. Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). For the purpose of considering the propriety of the allowance of these motions, we summarize the allegations of each complaint.

On October 24, 1973, Norma Dziokonski, a minor, alighted from a motor vehicle, used as a school bus, on Route 117 in Lancaster.[4] That motor vehicle was owned by

---

[4] The counts against Pelletier and Kroll allege that Norma was a minor at the time of the accident (October 24, 1973), although her age is not

the defendant Pelletier and operated by the defendant Kroll. A motor vehicle owned and operated by the defendant Babineau struck Norma as she was crossing the road. The complaints allege the negligence of each defendant on various grounds.

The complaint filed by the administratrix of the estate of Lorraine Dziokonski (Mrs. Dziokonski) alleges that Mrs. Dziokonski was the mother of Norma and that she "lived in the immediate vicinity of the accident, went to the scene of the accident and witnessed her daughter lying injured on the ground." Mrs. Dziokonski "suffered physical and emotional shock, distress and anguish as a result of the injury to her daughter and died while she was a passenger in the ambulance that was driving her daughter to the hospital." This complaint alleges one count for wrongful death and one count for conscious suffering against each of the three defendants.

The complaint filed by the administratrix of the estate of Anthony Dziokonski (Mr. Dziokonski) alleged the facts previously set forth and added that he was the father of Norma and the husband of Mrs. Dziokonski. Mr. Dziokonski "suffered an aggravated gastric ulcer, a coronary occlusion, physical and emotional shock, distress and anguish as a result of the injury to his daughter and the death of his wife and his death was caused thereby." This complaint similarly alleged a count for wrongful death and one count for conscious suffering against each of the three defendants.[5]

---

alleged. No similar allegation is made in the counts against Babineau, although Norma's minority may be inferable from the allegation that she had alighted from a school bus. Since January 1, 1974, the age of majority has been eighteen. G. L. c. 4, § 7, Fifty-first, inserted by St. 1973, c. 925, § 1, effective January 1, 1974, by St. 1973, c. 925, § 84.

[5] Neither complaint involves any claim on behalf of Norma for her own injuries. We do not know whether an action has been brought by or on behalf of Norma, nor whether the circumstances are such that under the no-fault law (St. 1970, c. 670), she has no enforceable claim against any defendant. G. L. c. 231, § 6D. See *Pinnick* v. *Cleary*, 360 Mass. 1, 8-9 (1971).

### The Spade Case.

We start with an analysis of *Spade* v. *Lynn & Boston R.R.*, 168 Mass. 285 (1897), which announced a principle of tort law that has been limited and refined by our subsequent decisions but not heretofore abandoned. Margaret Spade had been a passenger on a crowded car of the Lynn & Boston Railroad Company late one Saturday night in February, 1895. She was so frightened by the negligent conduct of an employee of the defendant in removing an unruly passenger from the car that she sustained emotional shock and consequent physical injury. The trial judge instructed the jury that, when physical injury results from fear or nervous shock, "there may be a recovery for that bodily injury, and for all the pain, mental or otherwise, which may arise out of that bodily injury." *Id.* at 287. The jury returned a verdict for Mrs. Spade, but this court held that the judge's charge misstated the law.

We acknowledged that fright might cause physical injury and that "it is hard on principle" to say why there should not be recovery even for the mental suffering caused by a defendant's negligence. *Id.* at 288. The court concluded, however, that "in practice it is impossible satisfactorily to administer any other rule." *Id.* We noted that recovery for fright or distress of mind alone is barred and, that being so, there can be no recovery for physical injuries caused solely by mental disturbance. *Id.* at 290. It was said to be unreasonable to hold persons bound to anticipate and guard against fright and its consequences and thought that a contrary rule would "open a wide door for unjust claims." *Id.*

### Subsequent Treatment of the Spade Rule in Massachusetts.

In *Smith* v. *Postal Tel. Cable Co.*, 174 Mass. 576, 577-578 (1899), which applied the Spade rule to a case involving a claim of gross negligence, Chief Justice Holmes, speaking for the court, said that the point decided in the *Spade* case

"is not put as a logical deduction from the general principles
of liability in tort, but as a limitation of those principles
upon purely practical grounds." *Id.* Later, he described the
Spade rule as "an arbitrary exception, based upon a notion
of what is practicable." *Homans* v. *Boston Elevated Ry.*,
180 Mass. 456, 457 (1902).

Consistently and from its inception, the Spade rule has
not been applied to deny recovery where immediate physi-
cal injuries result from negligently induced fright or emo-
tional shock. Thus, recovery has been allowed "[w]hen the
fright reasonably induces action which results in external in-
jury." *Cameron* v. *New England Tel. & Tel. Co.*, 182 Mass.
310, 312 (1902) (defendant's negligent blasting caused the
plaintiff to faint and sustain physical harm). *Freedman* v.
*Eastern Mass. St. Ry.*, 299 Mass. 246, 250 (1938) (plaintiff's
shoulder injured when she jumped to escape impending
danger). *Gannon* v. *New York, N.H. & H.R.R.*, 173 Mass.
40 (1899) (physical injuries sustained when plaintiff moved
in fright to avoid injury). See *Sullivan* v. *H.P. Hood & Sons*,
341 Mass. 216, 219-222 (1960).

Moreover, recovery for emotionally based physical in-
juries, sometimes described as "parasitic claims," has been
allowed in tort cases founded on traditional negligent im-
pact. *Driscoll* v. *Gaffey*, 207 Mass. 102, 105, 107 (1910).
Thus, where the plaintiff sustained direct physical injuries
as a result of the defendant's negligence and the plaintiff
also sustained paralysis, perhaps resulting solely from nerv-
ous shock, we did not require the plaintiff to prove that the
nervous shock or paralysis was a consequence of the direct
physical injuries. *Homans* v. *Boston Elevated Ry.*, 180
Mass. 456, 458 (1902). We note that allowing recovery for
emotionally based physical injuries unrelated to the physical
consequences of the negligently caused impact also presents
the threat of "unjust claims" (*Spade* v. *Lynn & Boston R.R.*,
*supra* at 290), or, perhaps more exactly, the threat of exag-
gerated claims.

We have declined to apply the Spade rule to workmen's
compensation claims. See *Fitzgibbons's Case*, 374 Mass.

633, 637 (1978), and cases cited. "The special reasons assigned in the *Spade* case for denying recovery have no application to workmen's compensation cases." *Charon's Case*, 321 Mass. 694, 697 (1947).

We have never applied the Spade rule to bar recovery for intentionally caused emotional distress. The *Spade* opinion itself recognized that the result might be different if the defendant's conduct had been intentional and not negligent. *Spade* v. *Lynn & Boston R.R.*, *supra* at 290. *White* v. *Sander*, 168 Mass. 296, 297 (1897). We left that question open in *Smith* v. *Postal Tel. Cable Co.*, 174 Mass. 576, 578 (1899), and it so remained until 1971, when we decided *George* v. *Jordan Marsh Co.*, 359 Mass. 244 (1971).

The *George* case involved allegations that, in their debt collection practices, the defendants intentionally caused emotional distress to the plaintiff and, as a result, her health deteriorated and she suffered two heart attacks. We held that "one who, without a privilege to do so, by extreme and outrageous conduct intentionally causes severe emotional distress to another, with bodily harm resulting from such distress, is subject to liability for such emotional distress and bodily harm." *Id.* at 255. We expressly left open the question now before us, whether there could be liability for negligent conduct causing emotional distress resulting in bodily injury.[6] *Id.*

The question of liability for intentionally or recklessly caused severe emotional distress in the absence of bodily harm came before us in *Agis* v. *Howard Johnson Co.*, 371 Mass. 140 (1976). There, we held that a complaint alleging extreme, outrageous, and unprivileged conduct by the defendant stated a cause of action in favor of both the female plaintiff who sustained emotional distress but no bodily harm and her husband for loss of consortium. We rejected arguments that we should deny recovery for emotion-

---

[6] We also reserved the question, which we need not answer here, whether there could be liability for negligently caused distress without resulting bodily injury. *Id.*

al distress where there is no physical injury because of the insurmountable difficulties of proof and the danger of fraudulent or frivolous claims. Although we recognized these problems, we rejected them as an absolute bar in all such cases and concluded that these were proper matters for consideration by the trier of fact in the adversary, trial process. *Id.* at 143-144.[7]

Although many industrial States initially required some impact as a basis for liability for physical harm resulting from fright, that rule has been abandoned in more recent times to the point where it has been said that "the courts which deny all remedy in such cases are fighting a rearguard action." W. Prosser, Torts § 54, at 333 (4th ed. 1971). As we have already indicated, we think the Spade rule should be abandoned. The threat of fraudulent claims cannot alone justify the denial of recovery in all cases.[8]

---

[7] We left open the question of liability for mental anguish or emotional distress without physical injuries in *McDonough* v. *Whalen,* 365 Mass. 506, 516-518 (1974), where the plaintiff's claim was based on negligent conduct (in construction of a septic system) and not, as in the *George* and *Agis* cases, on intentional or reckless conduct. We concluded that, even if there were liability for negligent conduct causing emotional distress without physical injuries, evidence that the plaintiff suffered gagging sensations and "got a little nervous and uptight . . ." (*id.* at 517), was insufficient evidence of emotional distress to justify recovery. *Id.* at 517-518. Because the appeals before us involve emotionally based physical injuries, again, we need not decide the question left open in the *McDonough* and *George* cases.

[8] Many injuries caused by negligence are the result of the operation of motor vehicles. General Laws c. 231, § 6D, inserted as part of our "no-fault" law (St. 1970, c. 670, § 5), permits recovery of "damages for pain and suffering, including mental suffering associated with . . . [bodily] injury" arising out of the operation or use of a motor vehicle within the Commonwealth only if certain physical injuries (including death) are involved or if certain reasonable and necessary medical and other expenses exceed $500. It may be that by its terms G. L. c. 231, § 6D, imposes its own restraints on fraudulent, frivolous, or minor motor vehicle tort claims where there is no impact. Even if it should not be read as imposing a limitation on recovery for emotionally based physical injuries, it may provide a reasonable guide in determining whether a physical injury is sufficiently substantial so as to justify recovery for negligently caused, emotionally based physical harm.

Whether a plaintiff's injuries were a reasonably foreseeable consequence of the defendant's negligence and whether the defendant caused those injuries are best left to determination in the normal manner before the trier of fact.

### RECOVERY FOR INJURIES ARISING FROM CONCERN OVER HARM TO ANOTHER.

The abandonment of the Spade rule is only the beginning in the process of determining whether the complaints in these cases state valid claims for relief. The typical case involving physical harm resulting from emotional distress concerns a person who was put in fear for his own safety as a result of alleged negligence of the defendant. Here, neither Mr. nor Mrs. Dziokonski was threatened with direct, contemporaneous injury as a result of the negligence of any defendant. Thus, we must consider the extent to which any defendant in this case may be held liable to the father or the mother, each of whom sustained physical injuries as a result of emotional distress over injuries incurred by their child.[9]

The weight of authority in this country would deny recovery in these cases. W. Prosser, Torts § 54, at 333 (4th ed. 1971). Annot., 29 A.L.R.3d 1337 (1970). Thus, as we fall back from the Spade rule, we could find comfort in numbers in denying recovery in these cases. We conclude, however, that we should not adopt a rule which absolutely denies recovery to every parent for whatever negligently caused, emotionally based physical injuries result from his concern over the safety of or injury to his injured child.

The arguments against imposing liability for a parent's injuries from shock and fear for his child have been stated clearly and forcefully in numerous opinions. See, e.g., *Tobin* v. *Grossman*, 24 N.Y.2d 609, 615-619 (1969); *Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal. 2d 295 (1963); *Jelley* v. *LaFlame*, 108 N.H. 471 (1968); *Waube* v. *War-*

---

[9] Mr. Dziokonski's injuries are alleged to be the product of his distress over learning of his daughter's injuries and of the death of his wife.

*rington,* 216 Wis. 603 (1935). The reasons advanced for not permitting recovery are principally that (1) there is still a difficulty of proof of causation which has not been mitigated by any change in technology or medical science, (2) no logical justification exists for limiting recovery solely to parents who are affected physically by fear for the safety of an injured child, and (3) the extension of liability will impose an inordinate burden on defendants. In short, under this view, liability should be denied for injuries from shock and fear for another's safety regardless of (a) the relationship of the plaintiff to the accident victim, (b) the plaintiff's proximity to the accident, or (c) whether the plaintiff observed either the accident or its immediate consequences.

Until 1968, the nearly unanimous weight of authority in this country denied recovery for emotionally based physical injuries resulting from concern for the safety of another where the plaintiff was not himself threatened with contemporaneous injury. W. Prosser, Torts § 54, at 334 (4th ed. 1971). There was support for recovery where the plaintiff was himself threatened with direct bodily harm because of the defendant's conduct. This rule, known as the zone of danger test, is expressed in Restatement (Second) of Torts § 313 (2) (1965). It denies recovery for bodily harm "caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the . . . [plaintiff]." *Id.* This Restatement rule was recommended with reluctance by the Reporter (Dean Prosser) and the advisers (Restatement [Second] of Torts 9-11 [Tent. Draft No. 5, 1960]), but the recommendation was thought to be compelled by the absence of then recent authority in support of a contrary view. *Id.* As a result of adding § 313 (2), a caveat appearing in the first Restatement of Torts was deleted. That caveat had left open the question whether a person might be liable "to the parent or spouse who witnesses the peril or harm of the child or spouse and thereby suffers anxiety or shock" causing bodily harm to the parent or spouse. Restatement of Torts § 313, at 851 (1934).

The "zone of danger" rule has something to commend it as a measure of the limits of liability. It permits a relatively easy determination of the persons who might recover for emotionally caused bodily injury by including only those to whom contemporaneous bodily harm of some sort might reasonably have been foreseen. It is arguably reasonable to impose liability for the physical consequences of emotional distress where the defendant's negligent conduct might have caused physical injury by direct impact but did not. The problem with the zone of danger rule, however, is that it is an inadequate measure of the reasonable foreseeability of the possibility of physical injury resulting from a parent's anxiety arising from harm to his child. The reasonable fore-seeability of such a physical injury to a parent does not turn on whether that parent was or was not a reasonable pros-pect for a contemporaneous injury because of the defend-ant's negligent conduct. Although the zone of danger rule tends to produce more reasonable results than the Spade rule and provides a means of limiting the scope of a defend-ant's liability, it lacks strong logical support.

In 1968, the Supreme Court of California, by a divided court (four to three), broke the solid ranks, overruled its decision in *Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal. 2d 295 (1963), and held that a cause of action was properly stated on behalf of a mother, in no danger herself, who wit-nessed her minor daughter's death in a motor vehicle acci-dent allegedly caused by the defendant's negligence, and who sustained emotional disturbance and shock to her nerv-ous system which caused her physical and mental pain and suffering. *Dillon* v. *Legg*, 68 Cal. 2d 728 (1968). An inter-mediate appellate court in California has since applied the reasoning of *Dillon* v. *Legg* to permit recovery by a mother who came on the scene of the accident but did not witness it. *Archibald* v. *Braverman*, 275 Cal. App. 2d 253 (1969). That court said, "Manifestly, the shock of seeing a child severely injured immediately after the tortious event may be

just as profound as that experienced in witnessing the accident itself." *Id.* at 256.[10]

Some tendency toward allowing recovery seems to be developing. The Supreme Court of Rhode Island has reached the same conclusion as the California Supreme Court in *Dillon* v. *Legg*, on substantially similar facts. *D'Ambra* v. *United States*, 114 R.I. 643 (1975). The results in these cases have the general support of commentators. See W. Prosser, Torts § 54, at 334-335 (4th ed. 1971); 2 F. Harper & F. James, Torts § 18.4, at 1035-1039 (1956). In *Leong* v. *Takasaki*, 55 Haw. 398, 399 (1974), the Supreme Court of Hawaii held that a complaint stated a cause of action "for nervous shock and psychic injuries suffered without accompanying physical impact or resulting physical consequences" when the plaintiff, a ten-year old boy, witnessed from a distance of several feet the death of his stepfather's mother who was struck by a motor vehicle driven by the defendant. In *Toms* v. *McConnell*, 45 Mich. App. 647 (1973), the Michigan Court of Appeals held that a mother alleged a cause of action where, from outside the zone of danger, she saw her daughter struck by the defendant's vehicle after her daughter alighted from a school bus and, as a result, the mother sustained significant depression. The Supreme Court of Washington has construed a statute as authorizing recovery by a parent for mental anguish in cases involving the wrongful death of or injury to a child. *Wilson* v. *Lund*, 80 Wash. 2d 91 (1971).

It is not argued seriously here, nor has it been regularly a basis for decisions denying liability, that the threat of fraudulent claims requires the adoption of a rule denying recovery to a parent who sustains physical harm from distress over peril to his child. See, e.g., *Tobin* v. *Grossman*, 24

---

[10] In *Krouse* v. *Graham*, 19 Cal. 3d 59, 76 (1977), the California Supreme Court accepted the view of the *Archibald* case, saying "We confirm the propriety of the expression in *Archibald*, *supra*, that the *Dillon* requirement of 'sensory and contemporaneous observance of the accident' does not require a *visual* perception of the impact causing the death or injury" (emphasis in original).

N.Y.2d 609, 615-616 (1969). The facts of cases of this character involve tortious injury to the child and substantial physical consequences to the parent. The tortfeasor is not confronted with the results of a fleeting instance of fear or excitement of which he might be unaware and against which he would be unable to present a defense. The fact that some claims might be manufactured or improperly expanded cannot justify the wholesale rejection of all claims. Of course, there is no suggestion that the physical injuries to Mr. and Mrs. Dziokonski were contrived. We have rejected the idea that tort liability in particular classes of cases must be denied because of the threat of fraud. *Lewis* v. *Lewis*, 370 Mass. 619, 622-623 (1976) (interspousal immunity in motor vehicle torts abrogated). *Sorensen* v. *Sorensen*, 369 Mass. 350, 363-365 (1975) (parental immunity in motor vehicle torts abrogated). We have chosen to leave the detection of fraud and collusion to the adversary process. See *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 143-144 (1976).

The fact that the causal connection between a parent's emotional response to peril to his child and the parent's resulting physical injuries is difficult to prove or disprove cannot justify denying all recovery. No one asserts, and we have never claimed, that physical reactions to emotional responses do not occur. See *Spade* v. *Lynn & Boston R.R.*, 168 Mass. 285, 288 (1897). We have recognized liability for exclusively emotional reactions to tortious conduct in particular circumstances (see, e.g., *Agis* v. *Howard Johnson Co.*, 371 Mass. 140 [1976]), and, in other instances, we have recognized liability for bodily harm resulting from emotional distress (*George* v. *Jordan Marsh Co.*, 359 Mass. 244 [1971]). We have upheld claims of the character involved here, as so called "parasitic" claims, where they are accompanied by a traditional form of tortious injury. See *Homans* v. *Boston Elevated Ry.*, 180 Mass. 456, 457-458 (1902). Indeed, certain elements of pain and suffering, recoverable in almost all personal injury actions, may be as tenuous causally as the harm for which recovery is sought in these cases.

The scope of duty in tort is often defined in terms of the reasonable foreseeability of the harm to the plaintiff resulting from the defendant's negligent conduct. Sometimes, liability is predicated on a judicial characterization that the defendant owed a duty to the plaintiff, or that the defendant's negligence was the proximate cause of the plaintiff's injury, or that the defendant is liable for the natural and probable consequences of his conduct. Each of these characterizations is actually a conclusion and is not a helpful guide to arriving at the proper answer in a given set of circumstances. We think reasonable foreseeability is a proper starting point in determining whether an actor is to be liable for the consequences of his negligence. Measured by this standard, it is clear that it is reasonably foreseeable that, if one negligently operates a motor vehicle so as to injure a person, there will be one or more persons sufficiently attached emotionally to the injured person that he or they will be affected. See *Tobin* v. *Grossman*, 24 N.Y.2d 609, 615 (1969), where the New York Court of Appeals acknowledged this fact but denied recovery for other reasons. The problem, however, is that the class of persons vicariously affected by the tortfeasor's conduct may be large. This concern has prompted many courts to deny all liability. See, e.g., *Tobin* v. *Grossmann, supra* at 615, 617, 619. They perceive no logical place at which to impose reasonable limits on the scope of a defendant's liability without going to the full extent of reasonable foreseeability, which would produce, as they see it, a risk of liability disproportionate to the defendant's culpability. The result has been that, as a matter of policy, courts have decided not to give full effect to reasonable foreseeability and have adopted limitations on liability, such as the impact rule or the zone of danger rule.[11]

---

[11] Keating, J., dissenting alone in *Tobin* v. *Grossman, supra* at 620-621, urged that there was no reason to place any restraints on reasonable foreseeability where there was "stringent evidence of causation and of actual injury."

Every effort must be made to avoid arbitrary lines which "unnecessarily produce incongruous and indefensible results." *Mone* v. *Greyhound Lines, Inc.*, 368 Mass. 354, 365 (1975) (Braucher, J., dissenting). The focus should be on underlying principles. *Id.* In cases of this character, there must be both a substantial physical injury and proof that the injury was caused by the defendant's negligence. Beyond this, the determination whether there should be liability for the injury sustained depends on a number of factors, such as where, when, and how the injury, to the third person entered into the consciousness of the claimant, and what degree there was of familial or other relationship between the claimant and the third person. See *Dillon* v. *Legg*, 68 Cal. 2d 728, 740-741 (1968). It does not matter in practice whether these factors are regarded as policy considerations imposing limitations on the scope of reasonable foreseeability (see R.E. Keeton, Legal Cause in the Law of Torts 66 [1963]), or as factors bearing on the determination of reasonable foreseeability itself. The fact is that, in cases of this character, such factors are relevant in measuring the limits of liability for emotionally based injuries resulting from a defendant's negligence. In some instances, it will be clear that the question is properly one for the trier of fact, while in others the claim will fall outside the range of circumstances within which there may be liability.

With these considerations in mind, we conclude that the allegations concerning a parent who sustains substantial physical harm as a result of severe mental distress over some peril or harm to his minor child caused by the defendant's negligence state a claim for which relief might be granted, where the parent either witnesses the accident or soon comes on the scene while the child is still there. This conclusion is not inconsistent with opinions of the highest courts in California (*Dillon* v. *Legg*, 68 Cal. 2d 728 [1968]), Hawaii (*Leong* v. *Takasaki*, 55 Haw. 398 [1974]),[12] and Rhode

---

[12] The Supreme Court of Hawaii may be read to have gone further than other courts. However, that court has denied recovery to one who was not

Island (*D'Ambra* v. *United States*, 114 R.I. 643 [1975]),[13] and of informed commentators on the subject. W. Prosser, Torts § 54, at 334-335 (4th ed. 1971). 2 F. Harper & F. James, Torts § 18.4, at 1035-1038 (1956).

On this premise, we think it clear that the complaint concerning Mrs. Dziokonski states a claim which withstands a motion to dismiss. The allegations of the complaint concerning Mr. Dziokonski, however, are far more indefinite. We do not know where, when, or how Mr. Dziokonski came to know of the injury to his daughter and the death of his wife. We do not have a clear indication of the relationship of his discovery of this information to any mental distress and physical injury he sustained. We cannot say, as matter of law, that, within the scope of the allegations of the complaint concerning Mr. Dziokonski, there are no circumstances which could conceivably justify recovery. Consequently, we conclude that neither of the complaints should be dismissed for failure to state a claim.

*Judgments reversed.*

QUIRICO, J. (dissenting). Although I am in full agreement with the court in its conclusion that *Spade* v. *Lynn & Boston R.R.*, 168 Mass. 285 (1897), should be overruled, I do not believe that liability should be extended to the degree described by the court in its opinion here. Therefore, I dissent from the reversal of the dismissal of the complaints of the two plaintiffs.

It is my view that liability for negligently causing emotional distress that results in physical injury should be

located a reasonable distance from the scene of the accident. *Kelley* v. *Kokua Sales & Supply, Ltd.*, 56 Haw. 204 (1975). That result is expressed in part on the ground that the consequences were not reasonably foreseeable (death in California following word of the death in Hawaii of the deceased's daughter and granddaughter). That court also states, however, that no duty of care applies to one who was not located within a reasonable distance from the scene of the accident.

[13] In each of these cases, however, the plaintiff witnessed the accident.

extended as far as would be allowed by the rule of the Restatement (Second) of Torts § 313 (1965). That section, while allowing recovery under some circumstances, provides that no recovery may be had for "illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other."[1] I would agree also that if, contrary to the facts in the present cases, a parent[2] had been present at the time of the alleged negligent conduct which caused the injury, and such parent had suffered emotional distress and resulting physical injury, then he or she should recover regardless of whether they were within the zone of risk of bodily harm created by the negligent act. See, e.g., *Dillon* v. *Legg*, 68 Cal. 2d 728, 730-731 (1968); *D'Ambra* v. *United States*, 114 R.I. 643, 657-658 (1975); W. Prosser, Torts § 54, at 334-335 (4th ed. 1971).[3] I do not believe, however, that liability should be extended further

---

[1] The Restatement of Torts § 313 (1934) specifically proposed no rule regarding recovery for emotional distress and resulting physical injury by a parent or spouse who witnessed the injury-causing negligent act. That section provided in part: "*Caveat*: The Institute expresses no opinion as to whether an actor whose conduct is negligent as involving an unreasonable risk of causing bodily harm to a child or spouse is liable for an illness or other bodily harm caused to the parent or spouse who witnesses the peril or harm of the child or spouse and thereby suffers anxiety or shock which is the legal cause of the parent's or spouse's illness or other bodily harm." *Id.* at 851.

[2] Although a parent was involved in the present cases, I believe the rule should apply similarly if a spouse or other close relative witnessed negligent conduct and injury.

[3] This was also apparently the view of a significant number of members of the American Law Institute who participated in the drafting of the Restatement (Second) of Torts (1965), since the Reporter's notes to § 313 state that "the feeling of a number of those present at the Institute meeting, [was] that the situation of a mother who sees her child negligently killed before her eyes is one in which recovery would be justified." Restatement (Second) of Torts Appendix § 313, Reporter's notes at 11 (1966). The narrower position actually taken by the Institute in § 313 was in accordance with what it believed to be the "heavy weight of authority" at the time. *Id.*

to allow recovery by a parent who comes on the scene of an accident after an injury has occurred to the child but before the child is removed. It is my opinion that we should not prescribe rules that allow or deny recovery by the parent on the basis of the speed and efficiency of an ambulance team in responding to an accident call, or on the haste with which a parent can be notified and rushed to the accident scene.