## Laskas v. Zimmerman

*Joseph R. McFadden, Jr.,* for plaintiff.
*James W. Saxton,* for defendant.

PEREZOUS, *J.,* May 7, 1985—Before the court is the preliminary objection of Lloyd H. Zimmerman, defendant, in the nature of a demurrer to the complaint of John Laskas and Eileen Laskas, husband and wife and parents and guardians of Alyson Laskas, a minor, for and on behalf of said minor and John Laskas and Eileen Laskas in their own right, plaintiffs.

The standard governing our disposition of defendant's demurrer has been stated as follows:

"In considering preliminary objections in the nature of a demurrer, the question presented in whether, on the facts averred, the law says with certainty that no recovery is possible. (Citation omitted.) A demurrer admits every well-pleaded material fact set forth in the complaint, as well as all inferences reasonably deducible therefrom, but not con-

clusions of law. (Citations omitted.) The law does not provide a 'magic formula' to determine the sufficiency of a plaintiff's complaint, however, the law is clear that a demurrer can only be sustained in a case free from doubt." (Citations omitted.) Bartanus v. Lis, 332 Pa. Super. 48, 52, 53, 480 A.2d 1178, 1180 (1984).

Under the above standard the facts are as follows. On or about January 10, 1984, nine-year-old plaintiff, Alyson Laskas, was on the property of defendant when she was, without warning, attacked by defendant's dog. The dog viciously bit into the right cheek and jaw of Alyson Laskas resulting in severe and disfiguring injuries. At all times relevant, Alyson Laskas did not provoke the attack or biting by defendant's dog nor did she engage in conduct which would cause the dog to attack and bite her.

Plaintiffs assert that the conduct of defendant's dog was caused by negligent, careless and reckless conduct on the part of defendant.

Count III of plaintiffs' complaint attempts to set forth a cause of action in John Laskas and Eileen Laskas based on the following averments:

"[A]s a direct and proximate result of the negligent, careless and reckless conduct on the part of defendant Lloyd Zimmerman, as above described, plaintiff, John Laskas, sustained extreme and severe emotional and mental distress *as a result of seeing and attempting to treat* the dog bites, dog puncture wounds and sutured wounds to the minor plaintiff *after defendant's dog had attacked her* for which he makes claim. The plaintiff, Eileen Laskas, sustained extreme and severe emotional distress *as a result of seeing* the sutured dog bites and dog puncture wounds for which she makes claim." (Emphasis added.)

The rights of the mother and father to recover damages for the negligent infliction of emotional distress will be examined separately.

Insofar as whether the father has stated a cause of action in Count III, the specific issue is whether a father may recover damages for emotional trauma incurred by virtue of viewing and attempting to treat his nine-year-old daughter immediately[1] after she had suffered severe disfiguring dog bite and puncture wounds.

In Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979), the Pennsylvania Supreme Court was confronted with the issue of whether a mother could recover damages for mental trauma incurred when she saw her minor daughter struck and killed by an automobile. The court adopted a theory of recovery for the negligent infliction of emotional stress based on the foreseeability of a party incurring emotional trauma resulting from the party's association with an incident in which another is negligently injured.[2] In determining whether plaintiff in Sinn was entitled to recover for her emotional distress, then-Justice Nix stated in his plurality opinion "we must examine whether the injuries sustained by [the mother] were reasonably foreseeable." Sinn v. Burd, 486 Pa. at 173, 404 A.2d at 696.

---

1. Under the standards set forth in Bartanus it will be inferred that the father came upon his daughter immediately after the accident because he was there in such time so as to treat his daughter for the wounds.

2. Prior to Sinn, Pennsylvania followed the "zone of danger theory" which required a party to be in personal danger of physical impact of a negligent force against him and to be in actual fear of impact in order for a cause of action for the negligent infliction of emotional distress to exist. Niederman v. Brodsky, 436 Pa. 401, 261 A.2d 84 (1970).

Justice Nix set forth the analysis for determining foreseeability which was established in Dillon v. Legg, 69 Cal. Rptr. 72, 441 P.2d 912 (1968):

"In the seminal Dillon case, the California Supreme Court identified three factors determinative of whether the injury to the plaintiff was reasonably foreseeable:

"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it; (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; [and] (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." Dillon v. Legg, 69 Cal. Rptr. at 80, 441 P.2d at 920.

In elaborating upon these factors, the court stated:

"The evaluation of these factors will indicate the *degree* of defendant's foreseeability: obviously defendant is more likely to foresee that a mother who observes an accident affecting her child will suffer harm than to foretell that a stranger witness will do so. Similarly, the degree of foreseeability of the third person's injury is far greater in the case of his contemporaneous observance of the accident than that in which he subsequently learns of it. Defendant is more likely to foresee that shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone distant from the accident will suffer more than a temporary emotional reaction. All these elements, of course, shade into each other; the fixing of obligation, intimately tied into the facts, depends upon each case.

"In light of these factors the court will determine whether the accident and harm was *reasonably* foreseeable. Such reasonable foreseeability does not turn on whether the particular defendant as an individual would have in actuality foreseen the exact accident and loss; it contemplates that courts, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected." (Emphasis in the original.) Id. at 80-81, 441 P.2d at 920-921. Sinn v. Burd, 486 Pa. at 170-171, 404 A.2d at 685.

Applying the preceding quoted discussion to the facts of the case Justice Nix concluded "Where the bystander is a mother who witnessed the violent death of her small child and emotional shock emanated directly from personal observation of the event, we hold as a matter of law that the mental distress and its effects is a foreseeable injury." Sinn v. Burd, 486 Pa. at 173, 404 A.2d at 686.

The second factor of the Sinn foreseeability analyses is the subject of defendant's demurrer. He asserts that plaintiff-parents have failed to state a cause of action for the negligent infliction of emotional distress because they did not see the injuries inflicted.

In Yandrich v. Radic, 495 Pa. 243, 433 A.2d 459 (1981), the Pennsylvania Supreme Court was confronted with the issue of whether a plaintiff-father could set forth a cause of action for negligent infliction of emotional distress for mental trauma he suffered as a result of his son incurring fatal injuries after being struck by an automobile. Plaintiff-father was neither a witness to the accident nor in the immediate vicinity thereof, but arrived at the accident

scene after the injured son had already been taken to the hospital and then proceeded to the hospital and remained there until the boy died five days later. An evenly divided court affirmed the order of the Superior Court which upheld the trial court's sustaining of defendant's preliminary objections in the nature of a demurrer for plaintiff's failure to state a cause of action.

In his lead opinion in support of affirmance in Yandrich, Justice Wilkinson found, without extended explanation, that the first and second factors were totally lacking. In his opinion in support of affirmance then-Justice Nix emphasized that the common theme and theories permitting recovery for the infliction of emotional distress was that the party seeking recovery occasioned a sensory experience causing the emotional distress. Justice Nix found that, under the facts of Yandrich, the effects of the negligence went no further than to create the situation which occasioned the grief, something for which Justice Nix stated there was no right to recovery. In his opinion in support of reversal, Justice Flaherty, with whom Justice Larson and Justice Kauffman joined, took the position that the basis in Sinn establishing a cause of action for negligent infliction of emotional distress was foreseeability and it was foreseeable that a parent would suffer emotional distress for injuries inflicted upon his or her child.

Each of the three factors for determining foreseeability established in Dillon, adopted by Justice Nix in Sinn, and apparently by the court as a whole in Yandrich, sets forth two factual possibilities, one representing a high degree of foreseeability that an individual would suffer emotional trauma and the other a low degree. It appears that the factu-

al posture of Sinn and Yandrich represents the two ends of the spectrum of degrees of foreseeability for the second factor of the analysis. In Sinn, plaintiff actually saw her daugher struck and injured ("the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident") and in Yandrich plaintiff-father learned of the accident from another and arrived at the accident scene after his son had been taken to the hospital (plaintiff learned "of the accident from others after its occurrence").

Within the parameters of the high degree of foreseeability present in Sinn and the lower degree present in Yandrich lie a myriad of factual possibilities, one of which is exemplified by the posture of the present case.

In Yandrich, Justice Nix opined that the cause of action established in Sinn is based on the theory that "the negligence of the actor results in a sensory experience that causes the resulting emotional distress." Yandrich v. Radic, 495 Pa. at 251, 433 A.2d at 463. In the case at bar, plaintiff-father is alleging he suffered emotional trauma from the observance of the injuries inflicted upon his daughter immediately[3] after the attack. Such a factual situation is much closer to "a sensory and contemporaneous observance of the accident" than to "learning of the accident from others after the accident." Indeed, plaintiff father in the case at bar is attempting to recover for the shock and emotional distress he suffered as a result of the sensory experience of viewing and attempting to treat his severely injured daughter. Permitting recovery for such a sensory

---

3. Again, this is inferred.

experience is distinguishable from permitting recovery for the grief one suffers from the loss of a loved one. We feel compelled under the factors set forth in Sinn to permit the plaintiff-father to state a cause of action for negligent infliction of emotional distress.

A number of other Pennsylvania common pleas court decisions have addressed the issue with varying results: plaintiff-mother who observed her daughter shortly before the girl was struck by an automobile, heard the impact and rushed to the accident scene can state a cause of action for the negligent infliction of emotional distress, Anfuso v. Smith, 15 D.&C.3d 389 (1980); plaintiff-foster parent who heard foster child struck by defendant's automobile and then saw the child lying unconscious can state a cause of action, Kratzer v. Unger, 17 D.&C.3d 771 (1981); blind plaintiff-mother who neither saw nor heard the accident involving her daughter but was told of accident by another and was then taken to the accident scene where she heard child crying "mommy, mommy" can state cause of action, Horton v. Reinsmith, 39 Lehigh Co. L.J. 472 (1982); mother who was inside a store and knew daughter's intention was to cross street outside of the store, heard screech of brakes and immediately ran out of store to view injured daughter cannot state a cause of action, Hildebrandt v. State Farm Mut. Auto Ins. Co., 25 D.&C.3d 404 (1982); plaintiff-brother who came upon scene of accident immediately after its occurrence and observed brother lying in pool of blood can state cause of action but plaintiff-mother who alleged only that she heard of accident from another cannot state cause of action, Ruane v. Moyer, 55 Northumb. L.J. 48 (1983); plaintiff-wife who came upon accident scene immediately after it occurred and observed

injured husband cannot state cause of action, Davidson v. Graybill, 69 Lanc. Law Rev. 420 (1985).[4]

While our decision is necessarily based upon the law of Pennsylvania as established in Sinn and Yandrich, we find support for our position in the appellate courts of other states which have adopted the foreseeability test as established in Dillon.

In Dziokonski v. Babineau, 380 N.E.2d 1295 (Sup. Jud. Ct., 1978), the Supreme Court of Massachusetts found that damages could be recovered for the negligent infliction of emotional distress by a mother who lived near the scene of an accident and went to the scene to witness her daughter lying injured on the ground. The court stated:

"[T]he allegations concerning a parent who sustains substantial physical harm as a result of severe emotional distress over some peril or harm to his minor child caused by defendant's negligence state a claim for which relief might be granted, where the parent either witnesses the accident or soon comes on the scene while the child is still there. [Citing, inter alia, Dillon]." Id. 380 N.E.2d at 1302.

The Court of Civil Appeals of Texas in Landreth v. Reed, 570 S.W. 2d 486 (Tex. Civ. App., 1978), permitted a sister to state a cause of action for emotional trauma incurred by virtue of her observing resuscitation efforts of her sister who drowned, even though the court stated it was not clear whether she actually viewed the drowning. The court stated:

"In seeing [the sister who drowned] brought from the pool in an emergency situation fraught with life-

---

4. We are not unmindful of the opinion of two other judges of this court denying the right of recovery in similar cases but we will nevertheless join those other trial courts in the opposite view and shall look to our appellate court of last resort for guidance on this point.

or-death drama, together with the traumatic shock of witnessing the desperate but unsuccessful attempts to save [her] life, [the witnessing sister] was brought so close to the reality of the accident as to render her experience an integral part of it. Such an experience is far different from the cause where one seeks damages for his grief or agony at merely seeing the dead body of a loved one, or upon learning of the death from others after its occurrence." Id. 570 S.W. 2d at 490.

In Mercado v. Transport, 422 A.2d 800 (Superior Ct. 1980), the Superior Court of New Jersey permitted a mother to state a cause of action who did not actually witness [sic] an accident involving her eight-year-old son but learned of it minutes later and hurried to see her son in the street, severely injured. The court stated that: "The requirement of 'direct . . . sensory and contemporaneous observance' stated in the [Portee v. Jaffee, 417 A.2d 521 (Sup. Ct. 1980) (the New Jersey Supreme Court case which adopted the foreseeability test of Dillon)] opinion relates not to witnessing the moment of actual impact, but to witnessing the suffering of the victim." Mercado v. Transport, 422 A.2d at 802.

Since Dillon there has been a split of authority in the lower appellate courts of California on the issue of whether recovery is permitted under circumstances similar to the case at bar. However, in the most recent opinion of Nevels v. Yeager, 199 Cal. Rptr. 300 (Cal. App. 1984), the court allowed a mother who did not witness an accident involving her daughter but came upon the accident scene within ten minutes of its occurrence and observed her daughter lying severely injured in the street to state a cause of action. The court specifically

disagreed with contrary California appellate decisions[5] and held that:

"[W]e must return to the Dillon guidelines and conclude that, when a close relative arrives at the scene of an accident soon after its occurrence, so that the scene is substantially as it was at the instant of the accident and sees the victim, who has suffered severe injury with all its intendant gore, and suffers shock therefrom, that relative has experienced shock contemporaneous with the accident." Id. 199 Cal. Rptr. at 305.

Also, support for the position taken in this opinion can be found in the teachings of Dean Prosser.

"It seems sufficiently obvious that the shock of a mother at danger or harm to her child may be both a real and a serious injury. All ordinary human feelings are in favor of her action against the negligent defendant. If a duty to her requires that she herself be in some recognizable danger, then it has properly been said that when a child is endangered, it is not beyond contemplation that its mother will be somewhere in the vicinity, and will suffer serious shock. There is surely no great triumph of logic in a rule which permits recovery for anxiety about an unborn child, and denies it once the child is born, or compensates for distress at the discovery of ransacked furniture but not the body of a murdered sister. Yet it is equally obvious that if recovery is to be permitted, there must be some limitation. It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one

---

5. See Hathaway v. Superior Court, 169 Cal. Rptr. 435 (Cal. App. 1981); Parsons v. Superior Court, 146 Cal. Rptr. 495 (Cal. App. 1978); Arauz v. Gerhardt, 137 Cal. Rptr. 619 (Cal. App. 1977); Madigan v. City of Santa Ana, 193 Cal. Rptr. 593 (Cal. App. 1983), for contrary holdings.

man were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as his friends. And obviously the danger of fictitious claims, and the necessity of some guarantee of genuineness, are even greater here than before. It is no doubt such considerations that have made the law extremely cautious.

Some limitations might, however, be suggested. It is clear that the injury threatened or inflicted upon the third person must be a serious one, of a nature to cause severe mental disturbance to the plaintiff, and that the shock must result in actual physical harm. The action might, at least initially, well be confined to members of the immediate family of the one endangered, or perhaps to husband, wife, parent, or child, to the exclusion of mere bystanders, and remote relatives. *As an additional safeguard, it might be required that the plaintiff be present at the time of the accident or peril, or at least that the shock be fairly contemporaneous with it, rather than follow when the plaintiff is informed of the whole matter at a latter date.* Admittedly such restrictions are quite arbitrary, have no reason in themselves, and would be imposed only in order to draw a line somewhere short of undue liability . . ." (Emphasis added.) Prosser, Law of Torts, 4th ed. 1971, p. 334, 335.

These are shifting sands, and no fit foundation. There is a duty if the court says there is a duty; the law, like the constitution, is what we make it. Duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the essential question. When we find a duty, breach and damage, everything has been said. The word serves a useful purpose in directing attention

to the obligation to be imposed upon the defendant, rather than the causal sequence of events; beyond that it serves none. In the decision whether or not there is a duty, many factors interplay the hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the law should fall. In the end the court will decide whether there is a duty on a basis of the mores of the community, "always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind." (Emphasis added.) Prosser, Palsgraf Revisited. 52 Mich. L. Rev. 1, 14-15 (1953).

While Sinn and Dillon evidenced a disdain for the application of rigid requirements, rather setting forth certain factors which could be analyzed by degrees to establish foreseeability, a rule which requires a parent to observe their child immediately after that child has suffered a severe injury, is both practical, and is in keeping with the general understanding of mankind that a parent will suffer emotional trauma from the shock of observing their child seriously injured.

In conclusion, we find that Pennsylvania case law has recognized the right to recover for the negligent infliction of emotional distress based on a theory of foreseeability, that the right to recover is predicated upon, inter alia, a party incurring a sensory shock which results in emotional trauma, and that such shock exists in cases such as the one at bar where a parent comes upon a seriously injured child immediately after the occurrence of an accident. Consequently, plaintiff father has stated a cause of action for the negligent infliction of emotional distress.

Regarding plaintiff mother, plaintiffs' complaint only asserts that she suffered emotional trauma as a

result of viewing the sutured dog bite and dog puncture wounds. There are no averments concerning the first and second factors of the foreseeability test of Sinn and therefore she has not stated a cause of action.

Accordingly, we enter the following

## ORDER

And now, May 7, 1985, for the reasons set forth in the attached opinion defendant's demurrer as to the claim for the negligent infliction of emotional distress asserted by plaintiff John Laskas is dismissed. The preliminary objection is sustained as to plaintiff Eileen Laskas with 20 days leave granted to amend the complaint.