**Anne ANDERSON, et al., Plaintiffs,**

**v.**

**W.R. GRACE & CO., et al., Defendants.**

**Civ. A. No. 82–1672–S.**

United States District Court,
D. Massachusetts.

Jan. 3, 1986.
As Amended Feb. 21, 1986.

Jan Richard Schlichtmann, Schlichtmann, Conway & Crowley, Boston, Mass., for plaintiffs.

William J. Cheeseman, Foley, Hoag & Eliot, Boston, Mass., for W.R. Grace & Co.

Jerome P. Facher, Hale & Dorr, Boston, Mass., for Beatrice Foods.

## MEMORANDUM AND ORDER ON DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

SKINNER, District Judge.

This case arises out of the defendants' alleged contamination of the groundwater in certain areas of Woburn, Massachusetts, with chemicals, including trichloroethylene and tetrachloroethylene. Plaintiffs allege that two of Woburn's water wells, Wells G and H, drew upon the contaminated water until the wells were closed in 1979 and that exposure to this contaminated water caused them to suffer severe injuries.

Of the 33 plaintiffs in this action, five are the administrators of minors who died of leukemia allegedly caused by exposure to the chemicals. They bring suit for wrongful death and conscious pain and suffering. Sixteen of the 28 living plaintiffs are members of the decedents' immediate families. These plaintiffs seek to recover for the emotional distress caused by witnessing the decedents' deaths. Three of the living plaintiffs also contracted leukemia and currently are either in remission or treatment for the disease. The 25 non-leukemic plaintiffs allege that exposure to the contaminated water caused a variety of illnesses and damaged their bodily systems. All of the living plaintiffs seek to recover for their illnesses and other damage, increased risk of developing future illness, and emotional distress. Six of the plaintiff families still reside in the area above the allegedly contaminated water. These plaintiffs seek injunctive relief under a nuisance theory.

Two of the defendants, W.R. Grace & Co. and Beatrice Foods Co. (collectively "defendants"), have jointly moved for partial summary judgment on several of plaintiffs' claims. They contend that:

(1) the wrongful death claims of Michael Zona, James Anderson and Carl Robbins, III are barred by the time limitations of the Massachusetts wrongful death statute, M.G.L. c. 229, § 2;

(2) the emotional distress claims of the plaintiffs who have not contracted leukemia may not stand because the emotional distress was not caused by any physical injury;

(3) the plaintiffs' claims for increased risk of developing serious illness in the

future are not recognized under Massachusetts law; and

(4) the plaintiffs lack standing to request injunctive relief under a theory of nuisance.[1]

As these contentions raise discrete issues, I will address each in turn.

## A. *Statute of Limitations.*

### 1. *Michael Zona.*

Defendants argue that Michael Zona's wrongful death action is barred by the statute of limitations. The Massachusetts wrongful death statute provides in pertinent part: "An action to recover damages under this section shall be commenced within three years from the date of death ..." M.G.L. c. 229, § 2. This wrongful death action was filed in May of 1982, more than eight years after Michael Zona died on February 23, 1974. Plaintiffs contend that the action was timely filed because the statute was tolled until May, 1979, when they discovered the alleged cause of Michael Zona's death, by the Massachusetts "discovery rule", which tolls the statute of limitations until a plaintiff knows or reasonably should know that he or she has been harmed as a result of the defendant's conduct. *Levin v. Berley*, 728 F.2d 551, 553 (1st Cir.1984) (citing *Franklin v. Albert*, 381 Mass. 611, 411 N.E.2d 458, 460 (1980)). The Supreme Judicial Court has not decided whether the discovery rule will toll the statute of limitations contained in the Massachusetts wrongful death statute, M.G.L. c. 229, § 2.

The First Circuit Court of Appeals framed the issues which I must address in determining whether to apply a state discovery rule to a wrongful death action in *Cadieux v. International Telephone & Telegraph Corp.*, 593 F.2d 142 (1st Cir. 1979) (Rhode Island law). The Court of Appeals relied on two factors in holding that the Supreme Court of Rhode Island would not extend the discovery rule to wrongful death cases brought after expira-

tion of the statutory period beginning at the "death of such person". First, the Rhode Island cases applying the discovery rule involved statutes of limitation requiring suit within a certain time after the cause of action "accrues". The Court of Appeals noted that such statutes, unlike the wrongful death statute, clearly permit judicial interpretation as to the time when the limitations period begins to run. Second, the Rhode Island Supreme Court had refused to read exceptions into the wrongful death statute of limitation because wrongful death was a legislatively created cause of action unknown to the common law and therefore not subject to judicial expansion. *Id.* at 143.

Massachusetts law is similar to the Rhode Island law examined in *Cadieux* in that the statute of limitation of the Massachusetts wrongful death statute provides that the limitation period begins upon "death". M.G.L. c. 229, § 2. In addition, the Massachusetts cases applying the discovery rule concern statutes under which the limitation period commences when the cause of action "accrues". *E.g., Franklin v. Albert*, 381 Mass. 611, 411 N.E.2d 458 (1980) (M.G.L. c. 260 § 4); *Hendrickson v. Sears*, 365 Mass. 83, 310 N.E.2d 131 (1974) (M.G.L. c. 260 §§ 2, 2A). The Massachusetts discovery rule stems from an interpretation of the word "accrues" in these statutes. *See, e.g., Olsen v. Bell Telephone Laboratories, Inc.*, 388 Mass. 171, 445 N.E.2d 609, 611 (1983) (As the statutes "[do] not direct when the period of limitation begins to run, that determination is for the court to make.").

However, the fact that the limitations period contained in the wrongful death statute does not refer to the accrual of the cause of action is not fatal to plaintiff's attempt to rely on the discovery rule under Massachusetts law. In holding that the courts lack the power to expansively interpret the Rhode Island wrongful death statute's limitations provision, the court of ap-

---

1. Defendants also seek summary judgment on the claims of Eric Aufiero. These claims were dismissed pursuant to Fed.R.Civ.P. 41(a)(2) on April 24, 1985.

peals in *Cadieux* relied on cases in which the Rhode Island Supreme Court

> refused to read exceptions into the statute of limitations, reasoning that the time limit is a condition on the existence of a legislatively created cause of action unknown to the common law and therefore not subject to judicial alteration or expansion.

593 F.2d at 143 (citations omitted). In Massachusetts, the cause of action for wrongful death is subject to limited judicial alteration and expansion because the "right to recovery for wrongful death is of common law origin". *Gaudette v. Webb*, 362 Mass. 60, 284 N.E.2d 222, 229 (1972) (overruling contrary decisions). The limitations period of the wrongful death statute is a limitation upon the remedy and not upon the right. *Id.* at 284 N.E.2d at 229. Accordingly, the court stated:

> We further hold that statutes limiting the period for bringing actions for death are to be construed in the same manner as the limitations contained in G.L. c. 260, the general statute of limitations, and that in appropriate cases they may be tolled by the various provisions of G.L. c. 260.

*Id.* The court then applied M.G.L. c. 260, § 7, which tolls the statute during plaintiff's minority, to allow the wrongful death action to continue. *Id.* at 230.

In *Gaudette*, the Supreme Judicial Court did not specifically construe the language of the wrongful death statute providing that the limitations period begins to run on the "date of death" because the statute incorporates certain other statutes of limitation, one of which—M.G.L. c. 260, § 4—applied. 284 N.E.2d at 225. However, in *Jenkins v. Jenkins*, 15 Mass.App. 934, 444 N.E.2d 1301, 1302–03 (1983) (rescript), the Appeals Court of Massachusetts relied on *Gaudette* in applying M.G.L. c. 260, § 12 to toll the limitations period commencing at the "date of death" for the period of fraudulent concealment of the cause of action for wrongful death.

■ As noted above, the discovery rule is a method of defining when a cause of action accrues. The principle behind the discovery rule is that "a plaintiff should be put on notice before his or her claim is barred by the passage of time." *Olsen*, 445 N.E.2d at 611. The notice required by the rule includes knowledge of both the injury and its cause—that plaintiff "has been harmed as a result of the defendant's conduct". *Fidler v. Eastman Kodak Co.*, 714 F.2d 192, 198 (1st Cir.1983) (quoting *Olsen*, 445 N.E.2d at 611); *see Franklin*, 411 N.E.2d at 463; *see also Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170 (1977) (statute tolled until plaintiff discovers that injury was caused by defendant's conduct).

Arguably, limitation statutes should apply equally to similar facts. Where the circumstances would allow an extension of time under the limitations statute for tort for mere wounding or injury, it may be unjust to permit the fact of death to bar the use of the discovery rule. *See Fure v. Sherman Hospital*, 64 Ill.App.3d 259, 21 Ill.Dec. 50, 55–60, 380 N.E.2d 1376, 1381–86 (1978).

■ The present state of Massachusetts law does not, therefore, foreclose the possibility that a discovery rule might be applied in starting the limitation period notwithstanding the statutory reference to the time of death. I cannot predict with any confidence what the Supreme Judicial Court would do with this issue. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). It is an issue well suited to certification. Since certification would not produce an answer before trial, the solution is to DENY the defendants' motion at the present time, subject to their right to renew the issue by motion for judgment notwithstanding the verdict in the event of a verdict for the plaintiff. The issue can then be certified to the Supreme Judicial Court on a full factual record for which that court has expressed a preference over questions certified in the abstract.

2. *James Anderson and Carl Robbins, III.*

Defendants argue that the wrongful death claims relating to James Anderson

and Carl Robbins, III, are barred by the wrongful death statute in effect in 1981, the year in which Anderson and Robbins died. In pertinent part, the statute read:

No recovery shall be had under this section for a death which does not occur within two years after the injury which caused the death.

M.G.L. c. 229, § 2, as amended by St.1973, c. 699, § 1.[2] The crucial issue is when plaintiffs' decedents suffered "the injury which caused the death". Defendants contend that the injury which caused the deaths of Anderson and Robbins occurred no later than at the time they were diagnosed as having leukemia. If so, the wrongful death actions would be barred. Anderson was diagnosed as having leukemia during January, 1972, and died on January 18, 1981. Robbins was diagnosed in October, 1976, and died on August 8, 1981. Plaintiffs argue that the time of diagnosis is irrelevant because Anderson's and Robbins' exposure to the contaminants allegedly causing their leukemia continued until the wells were closed in May, 1979. In an affidavit, plaintiffs' expert states:

Repeated and chronic exposure to the contaminants which occurred at least up until the wells were closed, May, 1979, for two of the children, Carl Robbins and James Anderson, after the manifestation of the lymphoreticular malignancies, aggravated and complicated the leukemic illnesses and processes, and contributed to and hastened the children's early demise.

Supplementary Affidavit of Dr. Alan S. Levin, M.D., at ¶ 6. Plaintiffs argue that this is sufficient injury to bring the claims within the statute.

■ The Massachusetts courts have not been faced with the need to construe the phrase "injury which caused the death" because the injuries at issue in the cases were a result of accidents of brief duration. E.g., Hutchinson v. H.E. Shaw Co., 277 Mass. 115, 177 N.E. 813 (1931) (injury caus-

ing death was automobile accident). In this action, the alleged cause of death was prolonged exposure to harmful chemicals rather than a single incident. I conclude that the "injury which caused the death" was plaintiffs' decedents' entire exposure to the contaminants up to the time the wells were closed. The affidavit of Dr. Levin establishes, for purposes of this motion, that each additional day of exposure to the contaminants contributed to the death of James Anderson in that, if Anderson had not been exposed to the chemicals after his leukemia had been diagnosed, he would have lived longer. The later exposure was thus a cause of death.

■ The defendants' reference to cases discussing the injury necessary for a cause of action to accrue is inapposite. See, e.g., Payton v. Abbott Labs, 551 F.Supp. 245 (D.Mass.1982); Joseph A. Fortin Construction v. Mass. Housing Finance Agency, 392 Mass. 440, 466 N.E.2d 514 (1984). The issue in these cases is whether an injury is sufficient to start the statute of limitations running, not whether an injury causing death has occurred. It is clear that a cause of action accrues when an insidious disease manifests itself and that an increase in the severity of an existing condition does not constitute a distinct injury. Olsen v. Bell Telephone Laboratories, Inc., 388 Mass. 171, 445 N.E.2d 609, 612 (1983); Gore v. Daniel O'Connell's Sons, Inc., 17 Mass.App. 645, 461 N.E.2d 256, 259–60 (1984). However, the additional harm caused by continued exposure to contaminants is not merely an increase in the severity of Anderson's leukemia in the usual course of the disease. Rather, it is an additional "injury" or "invasion of [a] legally protected interest". See Leardi v. Brown, 394 Mass. 151, 474 N.E.2d 1094, 1101 (1985) (citing Restatement (Second) of Torts § 7 (1965) (defining "injury")); cf. Daniels v. Beryllium Corporation, 211 F.Supp. 452, 456 (E.D.Pa.1962) (claim for

---

**2.** This sentence was deleted by St.1981, c. 493, § 1, approved October 21, 1981. The amended statute does not govern this case because it only applies to causes of action arising on and after January 1, 1982. St.1981, c. 493, § 2.

aggravation of injury by additional poisoning within limitations period not barred).

■ The broadest interpretation of the rule, however, does not save the case of Carl Robbins, III, whose last exposure to the allegedly contaminated water was more than two years prior to his death in August of 1981. Accordingly, defendants' motion is ALLOWED with respect to the claims of Carl Robbins, III, and DENIED with respect to those of James Anderson.

### B. *Claims for Emotional Distress.*

Defendants move for summary judgment on plaintiffs' claims of emotional distress on the grounds that the non-leukemic plaintiffs' distress was not caused by any physical injury. They also move for summary judgment on the emotional distress claims of plaintiffs who witnessed a family member die of leukemia, arguing that Massachusetts law does not recognize such a claim. Some plaintiffs are in both of these separate categories.

#### 1. *Physical Injury.*

In seeking summary judgment on the non-leukemic plaintiffs' claims for emotional distress, defendants rely on *Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171 (1982). In *Payton,* the Supreme Judicial Court answered a certified question as follows:

> [I]n order for ... plaintiffs to recover for negligently inflicted emotional distress, [they] must allege and prove [they] suffered physical harm as a result of the conduct which caused the emotional distress. We answer, further, that a plaintiff's physical harm must either cause or be caused by the emotional distress alleged, and that the physical harm must be manifested by objective symptomatology and substantiated by expert medical testimony.

*Id.* at 437 N.E.2d 181. Defendants attack plaintiffs' claims of emotional distress at three points: they argue that plaintiffs did

not suffer physical harm as a result of defendants' allegedly negligent conduct; that, if the plaintiffs did suffer any harm, it was not "manifested by objective symptomatology"; and that any manifest physical harm did not cause the claimed emotional distress.

The Third Amended Complaint alleges only that "each plaintiff has suffered a direct adverse physical affect [sic] ..." ¶ 63. Plaintiffs make a slightly more specific claim to physical injury in their answers to interrogatories. Each plaintiff states that exposure to contaminants in the water drawn from Wells G and H

> affected my body's ability to fight disease, [and] caused harm to my body's organ systems, including my respiratory, immunological, blood, central nervous, gastro-intestinal, urinary-renal systems ...

Plaintiffs' Further Answers to Interrogatories Propounded by Beatrice Foods Co., Answer 8(a).[3]

■ This alleged harm is sufficient to maintain plaintiffs' claims for emotional distress under *Payton.* As used in that opinion, the term "physical harm" denotes "harm to the bodies of the plaintiffs". 437 N.E.2d at 175 n. 4. In requiring physical harm rather than mere "injury" as an element of proof in a claim for emotional distress, the court required that a plaintiff show some actual physical damage as a predicate to suit. *See Leardi v. Brown,* 394 Mass. 151, 474 N.E.2d 1094, 1101 (1985) (distinguishing between "injury" and "harm").

■ Defendants argue that plaintiffs' alleged harm is "subcellular" and therefore not the type of harm required to support a claim for emotional distress under *Payton.* I disagree. The Supreme Judicial Court requires that plaintiffs' physical harm be "manifested by objective symptomatology and substantiated by expert medical testimony". 437 N.E.2d at 181. In setting

---

**3.** As the living plaintiffs' answers to interrogatories are identical in most respects, I refer to them collectively.

forth this requirement, the court did not distinguish between gross and subcellular harm. Instead, the court drew a line between harm which can be proven to exist through expert medical testimony based on objective evidence and harm which is merely speculative or based solely on a plaintiff's unsupported assertions. The phrase "manifested by objective symptomatology" does not indicate that the necessary harm need be immediately apparent but that its existence must be objectively evidenced. Where, as in this case, the harm is not obvious to the layman, its existence may not be demonstrated solely by the complaints of the alleged victim; it must also be "substantiated by expert medical testimony". Upon review of the pleadings and the affidavits of plaintiffs' expert, I cannot say as a matter of law that this standard will not be met at trial.

■ The alleged damage to plaintiffs' bodily systems is manifested by the many ailments which plaintiffs claim to have suffered as a result of exposure to the contaminated water.[4] Dr. Levin apparently will testify to the existence of changes in plaintiffs' bodies caused by exposure to the contaminated water. *See* Affidavit of Alan S. Levin, M.D., ("Levin Affidavit") ¶¶ 9–11 (July 1984); Supplementary Affidavit of Alan S. Levin, M.D., ("Levin Supplementary Affidavit") ¶ 3 (March 26, 1985). He will base his testimony on objective evidence of these changes, including the maladies listed in footnote 4. In one affidavit, Dr. Levin states that "[t]he clinical manifestation of [the cellular changes] is a function of the host ... Some individuals will manifest this damage as skin rashes and arthritis, while others will manifest the same damage as cancer". Levin Supplementary Affidavit ¶ 3. Dr. Levin explicitly states that the changes in plaintiffs' systems have "produced illnesses related to these systems,

which are indicated [in the Answers to Interrogatories]". *Id.* at ¶ 7. Although the affidavit does not specifically identify the illnesses suffered by each plaintiff as a result of the changes, nor state that plaintiffs suffered more ailments than the average person would have over the same time span, it is sufficient evidence of harm to support the existence of a factual dispute and bar summary judgment.

■ Under *Payton*, of course, injury is not sufficient. The harm allegedly caused by defendants' conduct must either have caused or been caused by the emotional distress. 437 N.E.2d at 181; *see DiGiovanni v. Latimer*, 390 Mass. 265, 454 N.E.2d 483, 486 (1983). The Complaint does not state that plaintiffs' emotional distress was caused by any physical harm. Plaintiffs only allege that "[a]s a result of the knowledge that they ... have consumed hazardous chemicals, the plaintiffs have suffered and will continue to suffer great emotional distress". Third Amended Complaint ¶ 65; *see also* ¶¶ F, M (defendants' conduct caused plaintiffs "to suffer emotional distress and mental anguish").

■ Plaintiffs provide more specific information about the source of their emotional distress in their answers to defendants' interrogatories. Each plaintiff states that "[a]s a result of the contaminated water ... I have experienced depression and anxiousness". Plaintiffs' Answers to W.R. Grace's Interrogatories (First Set), Answer 20. Plaintiffs also claim that

> The defendants' conduct in contributing to the pollution of the groundwater serving Wells G and H and their failure to prevent, monitor, acknowledge, or correct the pollution has affected my mental and emotional state. It has caused me to suffer anxiety, depression, fear, anger,

---

4. The list of ailments varies from plaintiff to plaintiff. The ailments include shortness of breath, decreased visual acuity, frequent waking, hoarseness, muscle aching, fatigue, chest pain, sore irritated dry throat, respiratory infections, stress incontinence, tingling, numbness, joint stiffness and aching, dry sensitive skin, rashes, cold sores, red burning eyes, headaches, diarrhea, vomiting, abdominal distress, post nasal discharge, nasal congestion, and nosebleeds. *See* Plaintiffs' Further Answers to Interrogatories Propounded by Defendant Beatrice Food Co., Answer 8(a).

frustration, hopelessness and distress....

Plaintiffs' Further Answers to Interrogatories Propounded by Beatrice Foods Co., Answer 9(a)–(b). None of these claims for emotional distress arise from physical injuries caused by defendants' conduct. Accordingly, they are not compensable under *Payton*, 437 N.E.2d at 181, or under ordinary principles of recovery for mental suffering. *Barney v. Magenis*, 241 Mass. 268, 273, 135 N.E. 142 (1922) (allowing recovery for mental suffering "connected with and growing out of the physical injury"); *see Bullard v. Central Vermont Ry.*, 565 F.2d 193, 197 (1st Cir.1977) (recovery allowed for "necessary or natural consequence of the physical injury" but not for grief, sorrow or mourning) (quoting *Sullivan v. Old Colony Street Ry. Co.*, 197 Mass. 512, 516, 83 N.E. 1091 (1908)); *Krouse v. Graham*, 19 Cal.3d 59, 137 Cal.Rptr. 863, 873, 562 P.2d 1022 (1977) (grief, sorrow, anger and retribution are improper elements of emotional distress).

 However, certain elements of plaintiffs' emotional distress stem from the physical harm to their immune systems allegedly caused by defendants' conduct and are compensable. Plaintiffs have stated that the illnesses contributed to by exposure to the contaminated water have caused them anxiety and pain. Plaintiffs' Further Answers to Interrogatories Propounded by Beatrice Foods Co., Answer 9(d). The excerpts from plaintiffs' depositions appended to defendants' motion indicate that plaintiffs are also worried over the increased susceptibility to disease which results from the alleged harm to their immune systems and exposure to carcinogens. As these elements of emotional distress arise out of plaintiffs' injuries,

plaintiffs may seek to recover for them. *Payton*, 437 N.E.2d at 181.[5]

Defendants contend that plaintiffs' physical harm did not "cause" plaintiffs' distress over their increased susceptibility to disease as required by *Payton*, 437 N.E.2d at 181. They argue that the fear arose out of discussions between plaintiffs and their expert witness, Dr. Levin, in which the expert informed plaintiffs of their suppressed immune systems. Assuming, as I must for purposes of motion, that Dr. Levin is telling the truth, this argument is frivolous.

 Plaintiffs can recover "only for that degree of emotional distress which a reasonable person, normally would have experienced under [the] circumstances". *Payton*, 437 N.E.2d at 181; *see* Restatement (Second) of Torts § 436A, comment c. The Supreme Judicial Court has explicitly stated that the reasonableness of a claim for emotional distress is to be determined by the trier of fact. *Id.* Accordingly, defendants' motion for summary judgment on the non-leukemic plaintiffs' claims for emotional distress is DENIED.

2. *Witnessing death of a family member.*

The second issue raised by defendants' motion is whether Massachusetts recognizes a claim for emotional distress for witnessing a family member die of a disease allegedly caused by defendants' conduct. This differs from the question considered in the preceding section because the concern now is whether the plaintiffs can recover for distress caused by witnessing the injuries of others, not by their own condition. The plaintiffs do not claim any

---

5. Plaintiffs also offer expert testimony in support of their argument that their emotional distress is caused by their physical harm. In his affidavit, Dr. Levin asserts that

> it is my opinion that each of the surviving plaintiffs is suffering from severe emotional distress and anxiety due to the organic impact of the poisoning on their bodies, as well as the anxiety related to and arising out of their chronic symptomatology ...

Supplementary Affidavit ¶ 8. Defendants have moved to strike this paragraph under Fed.R. Civ.P. 56(e) on the grounds that it is beyond the scope of Dr. Levin's expertise and is not based on personal knowledge. I agree that Dr. Levin's statement is too conclusory to be relied on. However, in light of the view of plaintiffs' claims I have taken above, it is not necessary to address the motion to strike.

physical harm resulted from this emotional distress.

The plaintiffs proceed on alternative theories: (1) that they were in the "zone of danger", Restatement (Second) of Torts § 313(2) (1965), and (2) that they themselves were the victims of an "impact" from the same tortious conduct that caused the death of the children.

The Supreme Judicial Court has adverted to the "zone of danger" rule on a number of occasions, e.g., Dziokonski v. Babineau, 375 Mass. 555, 380 N.E.2d 1295, 1300 (1978), but in my opinion the court has never adopted that rule. The basic rule is one of the foreseeability of the emotional harm. Id. at 380 N.E.2d 1301–03. Furthermore, in every circumstance but one, the harm for which damages may be recovered is not the emotional distress itself, but physical harm resulting from the emotional distress. Id. at 380 N.E.2d 1302; Ferriter v. Daniel O'Connell's Sons, Inc., 381 Mass. 507, 413 N.E.2d 690, 697 (1980). In the one additional circumstance, damages may be recovered for emotional distress over injury to a child or spouse when the plaintiff suffers contemporaneous physical injury from the same tortious conduct that caused the injury to the close relative. Cimino v. Milford Keg, Inc., 385 Mass. 323, 431 N.E.2d 920, 927 (1982).

Defendants apparently rely on the following passage from Payton v. Abbott Labs, 386 Mass. 540, 437 N.E.2d 171, 181 (1982), for the proposition that plaintiffs must have sustained injury which either caused or was caused by the emotional distress as a prerequisite to recovery:

> We therefore conclude, on the basis of the preceding analysis, that in order for any of these plaintiffs to recover for negligently inflicted emotional distress, she must allege and prove she suffered physical harm as a result of the conduct which caused the emotional distress. We answer, further, that a plaintiff's physical harm must either cause or be caused by the emotional distress alleged, and that the physical harm must be manifest-

ed by objective symptomatology and substantiated by expert medical testimony.

This passage was part of an extensive response to the following question certified to the court by me:

> Does Massachusetts recognize a right of action for emotional distress and anxiety caused by the negligence of a defendant, in the absence of any evidence of physical harm, where such emotional stress and anxiety are the result of an increased statistical likelihood [that] the plaintiff will suffer serious disease in the future?

The issue of liability to a bystander was not present in that case. The Supreme Judicial Court rightly made no reference to Cimino, decided in the same year. In my opinion, Payton v. Abbott Labs does not affect the validity of the Cimino decision.

■ Accordingly, the plaintiffs would be entitled to go forward on the basis of Cimino, if it were not for three further prudential limitations on recovery of a bystander for emotional distress resulting from injuries to another. These are the requirements of physical proximity to the accident, Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 450 N.E.2d 581, 589–90 (1983), temporal proximity to the negligent act, Miles v. Edward O. Tabor, M.D., Inc., 387 Mass. 783, 443 N.E.2d 1302, 1305–06 (1982), and familial proximity to the victim, Barnes v. Geiger, 15 Mass.App. 365, 446 N.E.2d 78, 81 & n. 5 (1983). See Prosser & Keeton on Torts § 54, p. 366 (5th ed. 1984). The plaintiffs in this case satisfy the requirement of Cohen, because they were present during the illness and death of the children, and at least 16 of them apparently satisfy the requirement of Barnes, because they are immediate family members of the decedents, but they do not meet the test imposed by Miles.

■ In Miles, a mother developed severe symptoms of emotional distress after the death of her baby, which occurred some two months after the tortious act of the defendant. The Supreme Judicial Court denied recovery because Miles' emotional distress resulted from her child's death and

not from experiencing or witnessing the effects of the defendant's negligence in the delivery room. 443 N.E.2d at 1305–06. In a footnote, the court distinguished *Cimino* because the emotional distress there was not a delayed response but occurred at the time of the defendant's negligent act. *Id.* at 1305 n. 8; *see also Gore v. Daniel O'Connell's Sons, Inc.,* 17 Mass.App. 645, 461 N.E.2d 256, 260–61 (1984) (denying recovery for distress resulting from diagnosis of plaintiffs' father's mental condition three years after accident). For emotional distress to be compensable under Massachusetts law, therefore, the distress must result from immediate apprehension of the defendant's negligence or its consequences. In each of the cases in which recovery for the emotional distress of a bystander has been allowed, there has been a dramatic traumatic shock causing immediate emotional distress. Such is not the case here. There is no indication in the Massachusetts cases that liability would be extended to a family member's emotional distress which built over time during the prolonged illness of a child.

Imposition of liability in that case, while logically indistinguishable from the trauma situation, would violate the Massachusetts court's demonstrated prudential inclination to keep the scope of liability within manageable bounds. *See Cohen,* 450 N.E.2d at 590 (that class of plaintiffs would be unreasonably large is "persuasive reason" for denying liability); *Dziokonski,* 480 N.E.2d at 1302 (requiring consideration of "where, when and how the injury to the third person entered into the consciousness of the claimant"). For an extended discussion of the policy reasons for denying liability for emotional distress arising out of the negligently induced illness of another, *see Plummer v. Abbott Labs,* 568 F.Supp. 920, 924–25 (D.R.I.1983) (applying Rhode Island law).

 In my opinion, in the present state of the law in Massachusetts, the Supreme Judicial Court would not permit recovery for emotional distress arising from the negligently induced illness of another, and

therefore the plaintiffs may not recover for such emotional distress in this case.

### C. *Claims for increased risk of future illness.*

Plaintiffs seek to recover damages for the increased risk of serious illness they claim resulted from consumption of and exposure to contaminated water. Third Amended Complaint ¶ 63. Defendants argue that Massachusetts does not recognize a claim for increased risk of future harm, regardless of whether plaintiffs have suffered physical harm. This issue has not been directly addressed by the Massachusetts courts. It was not decided in *Payton. See* 437 N.E.2d at 181 n. 8.

 Plaintiffs view their claim as merely an element of damages, compensation for the risk of probable future consequences stemming from negligently inflicted present harm. In Massachusetts,

> [a] plaintiff is entitled to compensation for all damages that reasonably are to be expected to follow, but not to those that possibly may follow, the injury which he has suffered. He is not restricted to compensation for suffering and expense which by a fair preponderance of the evidence he has proved will inevitably follow. He is entitled to compensation for suffering and expense which by a fair preponderance of the evidence he has satisfied the jury reasonably are to be expected to follow, so far as human knowledge can foretell.

*Pullen v. Boston Elevated Railway Co.,* 208 Mass. 356, 357–58, 94 N.E. 469 (1911). In addition, when there is a "reasonable probability" that future expenses will be required to remedy the consequences of a defendant's negligence, the jury may consider the expense in awarding damages. *Menard v. Collins,* 298 Mass. 40, 41, 9 N.E.2d 387 (1937). Plaintiffs argue that these cases indicate that Massachusetts accepts the general rule of tort law that "[o]ne injured by the tort of another is entitled to recover damages for all harm, past, present and prospective, legally caused by the tort". Restatement (Second)

of Torts § 910. I agree, subject to two caveats. First, as is indicated by *Pullen* and *Menard,* when an injured person seeks to recover for harms that may result in the future, recovery depends on establishing a "reasonable probability" that the harm will occur. *See* Restatement (Second) of Torts § 912, comment e. Second, recovery for future harm in an action assumes that a cause of action for that harm has accrued at the time recovery is sought. *See* Restatement (Second) of Torts § 910, comment a.

To view the risk of a future illness as part of damages is to ignore the question of whether a cause of action has accrued. Defendants argue that the cause of action for any future serious illness, including leukemia and other cancers, has not yet accrued because the injury has not yet occurred.[6] This is the rationale of the discovery rule applied to latent disease cases in Massachusetts under which the injury is equated with the manifestation of the disease. *Olsen v. Bell Telephone Laboratories, Inc.,* 388 Mass. 171, 445 N.E.2d 609, 612 (1983) (cause of action accrues when insidious disease manifests itself). The question thus becomes whether, upon the manifestation of one or more diseases, a cause of action accrues for all prospective diseases so that a plaintiff may seek to recover for physically distinct and separate diseases which may develop in the future. *See generally, Jackson v. Johns-Manville Sales Corp.,* 727 F.2d 506, 516–22 (5th Cir. 1984), *vacated for certification to the Mississippi Supreme Court,* 750 F.2d 1314, 327–28 (5th Cir.1985) (en banc), *certification declined,* 469 So.2d 99 (Miss.1985), *rev'd,* 781 F.2d 394 (5th Cir.1986) (en banc).

The answer to this question depends on the connection between the illnesses plaintiffs have suffered and fear they will suffer in the future. Unfortu-

nately, the nature of plaintiffs' claim for increased risk of future illness is unclear on two counts. Nothing in the present record indicates the magnitude of the increased risk or the diseases which plaintiffs may suffer. Paragraph 63 of the Third Amended Complaint only alleges the plaintiffs face an "increased risk of serious illness", and the affidavits of plaintiffs' expert only state that exposure to the chemicals "can induce" cancer and result in an "increased susceptibility to disease" including an "increased propensity to serious illnesses as well as cancer". Levin Affidavit ¶ 9; Supplemental Affidavit ¶ 7. Insofar as plaintiffs seek to recover for their probable future costs and suffering due to ailments of the types they already claim to have endured, they may seek damages in this action. However, plaintiffs also claim an increased risk of leukemia or other cancers. These diseases seem at least qualitatively different from the illnesses plaintiffs have actually suffered. The record is insufficient to determine whether leukemia and other cancers are part of the same disease process as the other illnesses alleged to have resulted from exposure to the contaminated water. If they are part of the same disease process, then plaintiffs may seek recovery for the future illness in this action by showing a "reasonable probability" that they will occur. *See Wilson v. Johns-Manville Sales Corp.,* 221 U.S.App. D.C. 337, 684 F.2d 111, 119 & n. 44 (D.C. Cir.1982) (noting traditional American rule requires proof that damage is more likely than not to occur); *Ayers v. Township of Jackson,* 202 N.J.Super. 106, 493 A.2d 1314, 1323, 1324 (App.Div.1985) (requiring that increased risk be quantified to determine whether future cancer is "reasonably probable"). If, however, they are distinct diseases, then plaintiffs must wait until the disease has manifested itself to sue.

---

6. The weight of authority would deny plaintiffs a cause of action solely for increased risk because no "injury" has occurred. *E.g., Plummer v. Abbott Laboratories,* 568 F.Supp. at 922; *Laswell v. Brown,* 524 F.Supp. 847, 850 (W.D.Mo. 1981), *aff'd,* 683 F.2d 261 (8th Cir.1982), *cert. denied sub nom. Laswell v. Weinberger,* 459 U.S.

1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *Mink v. University of Chicago,* 460 F.Supp. 713, 719 (N.D.Ill.1978); *Morrissey v. Eli Lilly & Co.,* 76 Ill.App.3d 753, 32 Ill.Dec. 30, 394 N.E.2d 1369, 1376 (1979). In this case, plaintiffs allege present injuries.

The policies which advise against holding that a cause of action for a disease accrues at the time plaintiff sustains some injury other than the illness were stated in *Gore v. Daniel O'Connell's Sons, Inc.*, 17 Mass. App. 645, 461 N.E.2d 256, 259 (1984):

> Not only does it offend fairness to require of claimants the gift of prophecy, but it is unsound judicial policy to encourage the initiation of lawsuits in anticipation that a grave disease will manifest itself pendente lite.

(citations omitted). Although *Gore* concerned the application of the discovery rule in an attempt to avoid a statute of limitations instead of a claim for future damage, the described policy of avoiding speculative claims applies equally in this situation. *Gore* indicates that Massachusetts would apply the discovery rule to permit suit for a disease even where an earlier injury had occurred if a claim for the disease would have been speculative at the time of the earlier injury.[7]

A further reason for denying plaintiffs' damages for the increased risk of future harm in this action is the inevitable inequity which would result if recovery were allowed. "To award damages based on a mere mathematical probability would significantly undercompensate those who actually do develop cancer and would be a windfall to those who do not." *Arnett v. Dow Chemical Corp.*, No. 729586, slip op. at 15 (Cal.Super.Ct. Mar. 21, 1983); *see also Wilson*, 684 F.2d at 120 n. 45. In addition, if plaintiffs could show that they were more likely than not to suffer cancer or other future illness, full recovery would be allowed for all plaintiffs, even though only some number more than half would

actually develop the illness. In such a case, the defendant would overcompensate the injured class. *See Jackson*, 727 F.2d at 520.

Accordingly, action on plaintiffs' claims for the increased risk of serious future illness, including cancer, must be delayed. If the future illnesses stem from the same disease process as the illnesses plaintiffs presently complain of, recovery must be sought in this action. If the disease processes are different, however, the cause of action for the future illness will not accrue until the illness manifests itself.

*D. Nuisance claims.*

Plaintiffs' final claim is for nuisance. They assert that the alleged contamination of the groundwater from which they formerly drew their water constitutes a nuisance which is "inimical to plaintiffs' health and restricts their access to and use of the groundwater flowing beneath East Woburn and beneath their property". Third Amended Complaint ¶ U. The continued disposal of hazardous substances on the ground and resulting presence of the substances in the soil of defendants' property in East Woburn is also alleged to be a nuisance because it constitutes a "further threat" to the groundwater. *Id.* at ¶ V. Plaintiffs seek damages and an injunction ordering defendants (1) to halt the disposal of hazardous substances on defendants' property in Woburn, (2) to remove the substances previously dumped on the property, and (3) to remove all contamination from the groundwater flowing beneath East Woburn and plaintiffs' property and "return

7. I recognize that the courts which have applied the discovery rule in this fashion have faced situations in which the plaintiffs had not sued over the earlier injury. *E.g. Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111 (D.C.Cir. 1982) (cited in *Gore*); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020 (1983); *Martinez-Ferrer v. Richardson-Merrell, Inc.*, 105 Cal. App.3d 316, 164 Cal.Rptr. 591 (1980). In that situation, the interest of judicial economy clearly favors allowing suit to prevent plaintiffs from being compelled to rush to court over claims which might not be worthy of litigation. In the instant case, plaintiffs seek to combine a number of claims, such that in this case judicial economy would be served by allowing the plaintiffs to recover for future harm. However, the precedent thus established would require other plaintiffs to rush to court where they might not otherwise do so and, in the long run, would create more lawsuits. The change in context does not alter the essential consideration.

that groundwater to the condition it would be in but for the contamination".

■■■■■■ The alleged contamination of the groundwater in East Woburn falls into the category of public nuisances. It is true that pollution of groundwater may constitute a private nuisance if the polluted water under a property comes into direct contact with and harms the owner or his property. *See Ball v. Nye,* 99 Mass. 582 (1868) (drainage of manure from defendant's vault into plaintiff's well and cellar, when known to defendant, is actionable negligence). However, plaintiffs in this case were only exposed to the water when it was pumped from Wells G and H by the Town of Woburn. The right to be free of contamination to the municipal water supply is clearly a "right common to the general public", thus interference with that right would be a public nuisance. *See Leary v. City of Boston,* 20 Mass.App. 605, 481 N.E.2d 1184, 1187–88 (1985) (quoting Restatement (Second) of Torts § 821B (1979)); *see also Wesson v. Washburn Iron Co.,* 95 Mass. (13 Allen) 95, 101 (1866) (noting that use of a common watering place is a public right); Restatement (Second) of Torts § 821B, comment b (interference with the public health is a common law public nuisance).

■■■■■■ Defendants argue that plaintiffs, as private persons, have no standing to bring an action based on the public nuisance of a restriction on use of Woburn's groundwater. The general rule is that the private injury sustained where a common right is impaired is "merged in the common nuisance and injury to all citizens, and the right is to be vindicated [through suit by a public official]." *Warner v. Mayor of Taunton,* 253 Mass. 116, 118, 148 N.E. 377 (1925); *see, e.g., United States v. Solvents Recovery Service of New England,* 496 F.Supp. 1127 (D.Conn.1980). But when a plaintiff has sustained "special or peculiar damage", he or she may maintain an individual action. *Warner,* 253 Mass. at 118, 148 N.E. 377. Injuries to a person's health are by their nature "special and peculiar" and cannot properly be said to be common or public. *Wesson,* 95 Mass. at 103; Restatement (Second) of Torts § 821C, comment d. As plaintiffs allege that they have suffered a variety of illnesses as a result of exposure to the contaminated water, they have standing to maintain this nuisance action.

■■■■■■ However, plaintiffs may only seek to obtain damages for their special injuries. The case upon which plaintiffs rely in their standing argument only provides that a "person whose property is damaged or whose health is injured or whose reasonable enjoyment of his estate as a place of residence is impaired or destroyed ... may well maintain *an action to recover compensation for the injury*". *Wesson,* 95 Mass. at 104 (emphasis added). If a nuisance is found, plaintiffs are entitled to recover (1) the loss in rental value of their property, if any, (2) compensation for physical injuries, and (3) upon a showing of independent personal injury, damages for emotional distress. *Harrison v. Textron, Inc.,* 367 Mass. 540, 328 N.E.2d 838, 847 & n. 13 (1975). Plaintiffs have not claimed any loss of property value.

■■■■■■ The injunctive relief requested in the Third Amended Complaint is sought only on behalf of the six plaintiff families who still reside in East Woburn. These plaintiffs allege that the existing groundwater contamination in East Woburn and under their property is a continuing threat to their health and invasion of their property rights and constitutes a continuing nuisance. Groundwater pollution may constitute a nuisance. Restatement (Second) of Torts § 832. However, this fact does not permit plaintiffs to raise the claim in a private action absent some actual detrimental effect on plaintiffs' use or enjoyment of their land. *See* Restatement (Second) of Torts § 832, comments b and c. Plaintiffs' abstract claim of a threat and invasion by the contaminated groundwater is not the required harm to their use and enjoyment of their property. Plaintiffs have cited no case in which the mere introduction of foreign material into the ground supported a cause of action. *Cf. United Electric Light*

*Co. v. Deliso Construction Co.*, 315 Mass. 313, 52 N.E.2d 553, 556–57 (1943) (pumping cement into ground harming plaintiff's underground equipment constitutes trespass); *Ball v. Nye*, 99 Mass. 582 (knowing contamination of groundwater by manure causing injury to plaintiff's well and cellar is actionable tort). Nor do plaintiffs' physical injuries support an injunction. Plaintiffs' exposure to the contaminated water ceased in May of 1979, when Wells G and H were closed. The requested relief would not mitigate plaintiffs' special injuries; it would only remedy the public nuisance of groundwater contamination.

This same logic requires that plaintiffs' claim for expenses for abating the nuisance be denied. *See Bousquet v. Commonwealth*, 374 Mass. 824, 372 N.E.2d 257, 258 (1978) (rescript); *Parker v. American Woolen Co.*, 215 Mass. 176, 102 N.E. 360, 361 (1913). In both *Bousquet* and *Parker*, the damages awarded were to compensate for costs incurred in "preventing, reducing or abating" the damage done to plaintiffs' property. Plaintiffs in the instant action have alleged no damage to their land other than the contamination of groundwater with which they claim no contact.

Defendants argue that plaintiffs' claims for damages on a theory of nuisance are merely duplicative of their negligence claims. This may well be true in regard to the personal injury claims. However, plaintiffs are entitled to present alternative theories of liability to the jury, so long as appropriate instructions are given to prevent double recovery for any element of damage. Accordingly, defendants' motion for summary judgment on plaintiffs' nuisance claims will be ALLOWED with respect to the claims for injunctive relief and expenses for abating the nuisance and is otherwise DENIED.

To summarize, defendants' joint motion for partial summary judgment is ALLOWED in regard to (1) the claims of Carl Robbins, III; (2) plaintiffs' claims of emo-

tional distress for witnessing a family member die of leukemia; and (3) plaintiffs' claims for injunctive relief on a theory of nuisance and the damage claims for the expenses of abating the alleged nuisance. The motion is otherwise DENIED.