Welch, J.
The plaintiff brings this action claiming negligent infliction of emotional distress which arose as she witnessed the death of her live-in boyfriend. Defendants move for summary, judgment. For the following reasons, the motion is denied.
BACKGROUND
The facts, viewed in a light most favorable to the non-moving party,[1] may be summarized as follows. Plaintiff Nancy Richmond (Richmond) and Kenneth Korthas (Korthas) were long-term cohabitants who in 1992 had been in a close relationship for nearly four years. The couple depended on one another for support, advice and companionship.[2] The parties’ submissions variously describe Richmond and Korthas as cohabitants, fiances, and girlfriend and boyfriend.
On September 19, 1992, after dining at a restaurant in Magnolia, Massachusetts, Richmond and Korthas were standing near Richmond’s car when an erratically driven vehicle approached them. The vehicle belonged to Defendant Patricia Shatford, and was driven by her daughter, Defendant Diane Shatford. Diane Shatford’s vehicle crashed into Richmond’s automobile and then into Kenneth Korthas pinning him against a nearby telephone pole. Korthas died soon thereafter. Richmond witnessed the accident and feared for her own safety as it transpired. Richmond also beheld first-hand the vehicle striking Korthas and his subsequent death. Although not physically injured in the accident, Richmond now suffers from emotional problems, with accompanying physical manifestations such as weight loss, nightmares and headaches.
DISCUSSION
Summary judgment is appropriate when there are no genuine issues of material fact on any relevant issue and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors, Inc., 410 Mass. 706, 711 (1991). Defendants argue that the plaintiffs emotional distress claim fails as a matter of law because she was not legally related to Kenneth Korthas, and because Massachusetts does not recognize recovery for emotional distress resulting from presence inside the “zone of danger.”
Massachusetts courts have, over the years, struggled to define a doctrine of bystander recovery to compensate persons who suffer emotional injury as a result of witnessing negligent injury of a family member or other close relation. Massachusetts has stopped short of explicitly adopting a “zone of danger” rule that would bar recovery for emotional distress suffered by a plaintiff who is not herself threatened with contemporaneous injury while witnessing the injury of a close family member or other relation. Dziokonski v. Babineau, 375 Mass. 555, 568 (1978). Instead, Massachusetts courts employ the traditional tort doctrine of reasonable foreseeability to govern bystander recovery, stating:
[T]he determination of whether there should be liability for the injury sustained depends on a number of factors, such as where, when and how the injury to the third person entered the consciousness of the claimant and what degree there was of familial or other relationship between the claimant and the third person.
Id. at 568 (citing Dillon v. Legg, 68 Cal.2d 728, 740-41 (1968)). Dziokonski rejected the zone of danger rule as a bar to recovery for those outside the realm of danger, i.e. those who did not fear for their own safety. The Supreme Judicial Court later clarified Dziokonski, stating that a plaintiff can recover for negligent infliction of emotional distress when he is present in the zone of danger — at least where physical impact or harm was inflicted upon the bystander. Cimino v. Milford Keg, Inc., 385 Mass. 323, 333 (1982).[3]
The concept of bystander recovery was further illuminated in Barnes v. Geiger, where the Appeals Court refused to allow recovery for a bystander who was mistaken about the identity of the victim. 15 Mass.App.Ct. 365, 368, rev. denied, 389 Mass. 1101 (1983). In Barnes a mother saw a car strike a pedestrian from some distance, and rushed to the scene of the accident, believing that her child was the victim. Id. at 365-66. She arrived to find the fatally injured child was not her own. Id. at 366. The unrelated mother sued for the negligent infliction of emotional distress she suffered by witnessing the accident. Id. The Barnes court held that it would be unreasonable to expand the class of plaintiffs to include persons who mistook the gravity of the victim’s injuries or erroneously identified the victim as someone with whom they had a close relationship. Id. at 368. As the Appeals Court (Kass, J.) explained:
Daily life is too full of momentary perturbation. Injury to a child and the protracted anguish placed upon the witnessing parent is, on the scale of human experience, tangible and predictable. Distress based upon mistake as to the circumstances *296 is ephemeral and will vary with the disposition of a person to imagine that the worst has happened.
Id. The Barnes court concluded that, as a matter of law, that “psychic trauma and resulting physical injury” to a person who mistakenly believes a close family member to be injured “is beyond the reasonably foreseeable.” Id. at 369.
Based on these authorities, the defendants here are not entitled to summary judgment as a matter of law. A jury could reasonably conclude, based on the facts of this case, that it was foreseeable that those within the zone of danger created by the defendants’ negligence would suffer emotional distress, and that the immediate victim of their negligence would be accompanied by a person with whom he had a close and abiding relationship. First of all, the plaintiff has raised a factual issue as to whether she was inside the zone of danger. As the court held in Cimino, a plaintiff present in the zone of danger may recover for the negligent infliction of emotional distress. 385 Mass. at 333. Cimino, unlike this case, did involve simultaneous impact or injury to the bystander. The Supreme Judicial Court, however, no longer adheres to a strict “impact” rule.
Second, even if Cimino is not controlling or if Richmond was outside the immediate zone of danger, a jury applying the Dziokonski factors, 375 Mass. at 568, could find that it was reasonably foreseeable to the tortfeasor that her negligence would affect not only Korthas but also family and other relations accompanying him. The accident took place on a public street with restaurants and in the early evening: a time and place where it was reasonably foreseeable that people would be gathering with family and other close relations for a meal. In addition the accident was a rapid succession of events during which Richmond feared for herself and beheld Korthas’ violent death. All of these factors could convince a jury that it was reasonably foreseeable that Richmond would be emotionally injured by the defendants’ negligence.
Also, a reasonable jury could find that “degree . . . of familial or other relationship between the claimant and the third person” was quite strong. Id. Richmond can present significant evidence that her relationship with Korthas was close: they lived together for an extended period of time, shared at least some household financial obligations and were emotionally dependent on one another. In addition, cohabiting relationships such as the one which Richmond and Korthas had are not uncommon. People in our society often share their households with others to whom they are not necessarily legally related. To borrow Judge Kass’ reasoning in Barnes, injury to a loved one and the protracted anguish placed upon the witnessing the death of or serious injury to a partner is “tangible and predictable” and should not be considered, as a matter of law, so “momentary” or “ephemeral” as not to be reasonably foreseeable. 15 Mass.App.Ct. at 368-69. In sum, it is up to a jury to determine if it was reasonably foreseeable that Richmond would suffer emotional distress based on witnessing the accident. Summary judgment is therefore inappropriate.
The defendants’ argument that Richmond’s case must fail because she was not related to Korthas by blood, marriage or adoption is not persuasive.[4] Massachusetts has never imposed a bright line rule limiting bystander recovery to persons who have a legally recognized relationship with the victim. In fact, Dziokonski, the leading case in Massachusetts on bystander recovery, explicitly states that a “familial or other relationship” may be the basis for recovery for bystander liability. Id. (emphasis added). While the defendants correctly point out that published Massachusetts cases all present the question in the context of familial relationships, no published Massachusetts case explicitly precludes a plaintiff without a legally recognized familial relationship from recovering. Dziokonski warned, moreover, of the danger of creating arbitrary lines which produce incongruous and indefensible results. Id. Allowing summary judgment in this case, on the basis of the lack of a legal family tie between Richmond and Korthas would be such an incongruous and indefensible result as well as one which is supported neither by Dziokonski nor Massachusetts case law.[5]
Further, the court is not inclined to adopt a different result based on Anderson v. W.R. Grace & Co., 628 F.Supp. 1219 (D. Mass. 1986). There, a federal district court interpreted Massachusetts law to require that a plaintiff seeking recovery for emotional damages stemming from observing another’s injuries had to show physical and temporal proximity to the accident, and familial proximity to the victim. Id. at 1229. Of course, this court is not bound by the federal district court’s interpretation of Massachusetts law. Commonwealth v. Montanez, 388 Mass. 603, 604 (1983). While giving great deference to that prior decision, I conclude that the Anderson court’s interpretation of Massachusetts case law as requiring a showing of “familial proximity,” is misguided. Anderson relies on Barnes (where a mother observed an injury to a child she mistakenly believed was hers) as supporting a familial proximity requirement. 628 F.Supp. at 1229. Barnes does not support such a conclusion. Rather, Barnes turns not on the lack of a familial relationship between the plaintiff and the victim, but on the plaintiffs utter inability to show reasonable foreseeability. 368 Mass.App.Ct. at 368.[6] While it is true that the lack of a filial relationship between the plaintiff and victim in Barnes affected the court’s decision concerning reasonable foreseeability, the court neither explicitly states that a familial relationship is crucial to a plaintiffs recovery, nor criticizes Dziokonskis multi-factor test for determining reasonable foreseeability.
Defendants also argue, unconvincingly, that a showing of familial proximity is required by Massachu *297 setts authorities protecting the institution of legal marriage. In Feliciano v. Rosemar Silver Co., 401 Mass. 141, 142 (1987), the Supreme Judicial Court denied a long-term cohabitant’s loss of consortium claim. The Feliciano court was concerned about marriage as a social institution, and about the importance to the Commonwealth that its integrity not be jeopardized. Id. The court in Feliciano was concerned with the protection of the legal status of marriage, along with its attendant rights and benefits, including the spousal right to recover for loss of affection. The tort of infliction of emotional distress arises from a different source than the marital/familial base on which the tort of loss of consortium is grounded. Allowing an unrelated person to recover emotional distress damages has no effect upon the institution of marriage. The court’s holding in this case does not extend to cohabitants any right they did not previously have to recover in tort pursuant to DziokonskL Thus, the concern of the Feliciano court that the institution of marriage would somehow be eroded by allowing unmarried persons to assert rights previously asserted only by married persons simply does not present itself here.[7]
ORDER
For the foregoing reasons, the defendants’ motion for summary judgment is DENIED.

Connecticut Nat’l Bank of Hartford v. Kommit, 31 Mass.App.Ct. 348, 353 (1991).

The plaintiff testified at her deposition that she and Korthas spent time together with Korthas’ daughter and attended a family birthday party for her. Richmond also loaned Korthas money. During the period in which they lived together, Richmond and Korthas shared some household expenses.

The Cimino court stated:
The plaintiff here . . . was indisputably in danger of being hit by [the defendant’s] car. There [is] considerable authority .. . permitting a person within the so-called zone of danger to recover for emotional distress and injuries caused by witnessing injuries negligently inflicted on another ... It seems clear . . . that the case law of this Commonwealth . . . allow[s] recovery for negligent infliction of emotional distress where physical impact or harm was involved . . .
Id.(citations omitted). The bystander in Cimino was knocked into some bushes by the impact of the negligently driven car.

In a footnote, Barnes presaged this issue. Id. at 369 n. 5. Barnes cites cases (from foreign jurisdictions) holding that a husband-wife relationship is sufficiently close to allow bystander recovery, as is a sibling relationship. Recovery was also allowed based on the relationship between a child and his step grandmother, and the relationship between a dog and its owner. The court concludes by quoting the flabbergasted dissent from a California case denying recovery to long-term cohabitants:
Giving full credit to the ratified air at the appellate level the conclusion reached here today is nevertheless astonishing: my majority colleagues have determined the incidence of cohabitation without benefit of clergy in contemporary California society to be so rare that it can be characterized as ‘unexpected and remote.’
I'd.(citing Drew v. Drake, 110 Cal.App.3d 555, 559 (1980) (Poche, J. dissenting)). In line with Justice Poche, this court is not convinced that cohabitation is so unexpected and remote as to be outside the realm of what a jury may find is reasonably foreseeable.

To deny Richmond recovery because her relationship with Korthas was not solemnized legally is to ignore the factual showing that Richmond has made establishing the importance in her life of her relationship with Korthas. If Richmond had married Korthas in the hour before the accident took place, she would survive the application of such a bright line rule at the summary judgment stage. Such a bright line test appears counter to Dziokonskis instruction that reasonable foreseeability should determine liability for emotional damages resulting from seeing a close family member or other relation injured in an accident.
Given the expansive potential of the tort of negligent infliction of emotional distress, the Supreme Judicial Court has attempted to place limits on the scope of liability. See, e.g., Payton v. Abott Labs, 386 Mass. 540, 557(1982); Sullivan v. Boston Gas Co., 414 Mass. 129, 137-38 (1993) (physical harm must accompany psychic trauma). The Supreme Judicial Court, however, has so far refused to impose a “familial relation” bright line test in this area.

The court stated, “Expressing the issue in terms of foreseeability, we are of opinion that psychic trauma and resulting physical injury to a person who mistakenly believes a close family member to be the victim of an observed accident is beyond the reasonably foreseeable." Id. at 368-69 (emphasis added).

This same concern was apparently at play in Collins v. Guggenheim, 417 Mass. 615, 617-18 (1994), where the Supreme Judicial Court denied a plaintiffs claim of an equitable interest in his cohabitant’s property after their separation. As noted above, there is no concern here, as there was in Collins, that, “the incidents of the marital relationship [will] attach to an arrangement of cohabitation without marriage.” Id. In this case, the plaintiff merely asserts a right to tort recovery on the basis that her emotional distress was the reasonably foreseeable result of defendant’s negligence. Her theory of recovery does not purport to cast her relationship with Korthas as a marital or quasi-marital relationship.